## Wytheville.

## SWEENEY V. FOSTER AND OTHERS.

### June 8, 1911.

1. EQUITY JURISDICTION—*Adequate Remedy at Law—Damages—Sales.*—If a vendor of bonds refuses to deliver them to the purchaser, and thereafter sells to another at an advance price, the remedy of the first purchaser is by an action at law to recover the damages sustained. Equity has no jurisdiction.

2. EQUITY—*Assignments—Beneficial Owners—Necessary Parties.*—A party who has parted with the legal title to, and beneficial ownership in, a chose in action cannot maintain a suit thereon for its enforcement to which the beneficial owners are not parties. If it is sought to annul the assignment of the beneficial ownership and to enforce the contract against the other party thereto in the same suit, the beneficial assignees are necessary and indispensable parties to the suit. All persons interested in the subject matter of a suit, and to be affected by its results, are necessary parties.

3. EQUITY—*Necessary Parties—Lack of Jurisdiction.*—A court of equity will refuse to entertain a suit when it cannot acquire jurisdiction over persons whose interests in the subject matter of the suit, and in the relief sought, are so bound up with that of other parties to the suit that their legal presence as parties to the proceeding is an absolute necessity.

4. EQUITY—*Rescission—When to Be Granted.*—In order to warrant a court of equity in exercising the drastic remedy of rescinding a contract, there must be not only a sufficient averment of facts showing the plaintiff entitled in equity to the relief sought, and satisfactory proof of those facts to justify the interposition of the court, but the court must be able substantially to restore the parties to the position which they occupied before they entered into the contract.

Appeal from a decree of the Court of Law and Chancery of the city of Norfolk. Decree for defendants. Complainant appeals.

*Affirmed.*

The opinion states the case.

*William L. Royall,* for the appellant.

*D. Lawrence Groner* and *Tazewell Taylor,* for the appellees.

CARDWELL, J., delivered the opinion of the court.

A. L. Swneeney filed the bill in this cause against S. L. Foster, W. T. Simcoe and W. C. Cobb, of Norfolk, Va., and Frank T. Zell and J. W. Van Dyke, of Philadelphia, Pa., as defendants. Foster, Simcoe and Cobb, upon whom there was personal service of process, demurred to the bill on a number of grounds, which demurrer was sustained; whereupon complainant filed his amended bill, to which there was a demurrer by the same defendants, which likewise was sustained, and the amended bill dismissed, to which order dismissing the amended bill this appeal is taken. The defendants, Zell and Van Dyke, being non-residents of the State of Virginia, have never been personally served with process to answer either the original or amended bill, nor have they ever appeared in this cause.

The following statement of the facts to be gathered from the allegations of the amended bill is sufficient to enable us to pass upon the demurrer thereto sustained by the trial court, and which ruling is the only assignment of error requiring our consideration, towit:

The Eay Shore Terminal Company, a local street-car company operating in and about Norfolk, Va., had created a mortgage on its property to secure $500,000, the amount of its negotiable coupon bonds, $178,000 of which had been issued and were in the hands of the public. It had also made notes, aggregating an additional large sum, which were secured by the deposit of a large portion of the remaining unissued bonds, as collateral security. Being unable to meet its obligations, the road was placed in the

hands of receivers by a Federal court, and the holders of the greater portion of the $178,000 of bonds just mentioned, for their mutual protection, appointed a committee, consisting of Foster, Simcoe and Cobb, with whom the bonds of such holders as joined therein were deposited, under the terms of a power of attorney, by which the committee was authorized, as they saw fit, to dispose of the same, and to make any contract with respect thereto for the benefit of their principals.

The amended bill of Sweeney alleges that subsequent to the appointment of the committee he entered into an agreement with them, dated September 12, 1905, whereby he was given the right to purchase all the bonds lodged with the committee at a certain stipulated price, and that after entering into this alleged contract he entered into negotiations with one Charles A. Burr, of Philadelphia, Pa., whereby Burr was to procure the capital, and in consideration thereof was to have an interest in any profits that might be made in the transaction, and to whom the contract was assigned as an evidence of good faith. It is then alleged that after the assignment of the contract to Burr, and after the latter had promised all parties in interest, including Sweeney, to carry out the contract, he put off the matter from time to time and finally proved untrue to the employment, in that he undertook to purchase the interest of the individuals who had pooled their bonds, and thereby sought to render the contract between them and the complainant, Sweeney, impossible of fulfilment; that subsequently, and after the discovery of Burr's bad faith by Sweeney (though the time is not stated), Burr reassigned the contract to Sweeney; and then according to the allegations of the amended bill the complainant Sweeney's alleged contract was never carried into effect, but in the latter part of January, 1906, the committee disposed of the bonds to Edward B. Smith & Co., of Philadelphia, who

paid for and used them in the purchase of the railroad at the foreclosure sale which followed. It is further alleged that subsequently to this Sweeney, through his attorney, endeavored by a bill in chancery to enjoin the committee from carrying out the contract with Smith & Company, but the injunction was refused, and the bill asking for the injunction was never filed; that subsequently to that the same or a similar bill was filed in the Court of Law and Chancery of the city of Norfolk, but was dismissed by Sweeney without any effort being made to prosecute it.

It further appears from the amended bill that in April, 1906, Sweeney assigned his contract with the committee to one Frank D. Zell, as agent for John W. Van Dyke, and received a large sum of money in payment on the contract of assignment, and that subsequently, while the title to the contract was still vested in Zell, Sweeney brought suit in a Federal court in Pennsylvania against Smith & Company as well as against Zell and Van Dyke, the purpose of which was to require Zell and Van Dyke, for reasons set out, to reassign the contract—that is, the contract between Sweeney and the committee—to Sweeney, to enable the latter in the same suit to obtain a decree against Smith & Co. for certain alleged profits they were supposed to have made out of the bonds purchased from the committee. Smith & Co. and Zell and Van Dyke demurred to that bill, and the demurrer as to Smith & Co. was sustained, upon the ground that there was no legal liability upon them to Sweeney; and their action in the purchase of the bonds was fully approved, which ruling was affirmed upon appeal by the United States Circuit Court of Appeals of the Third Circuit and also by the United States Supreme Court, in denying the application of Sweeney for a *certiorari*. It is not necessary to state the grounds upon which that suit was disposed of. The printed record in the case is made

an exhibit with the bill here, and from that it appears that Sweeney, not satisfied with the result of that suit, had filed in the Federal court of Philadelphia a chancery suit against Chandler Brothers & Co., a firm of bankers, likewise endeavoring to recover from that firm the alleged profits out of the same transaction which was the basis of his claim against Smith & Co.; but this suit, as the amended bill here states, Sweeney voluntarily dismissed. After all of this litigation, resulting unprofitably to Sweeney, and after the lapse of five years, the present suit was instituted in the Court of Law and Chancery of the city of Norfolk, with the result that has been mentioned.

The relief sought by the amended bill in this cause is dual in character. First, it is sought to obtain a reassignment of the contract from Zell and Van Dyke to Sweeney, the complainant; and, secondly, upon the reassignment of the same, or upon an adjudication that the assignment was void, to recover damages from Foster, Simcoe and Cobb, composing the committee who made the said contract with Sweeney, upon the ground that Sweeney had contracted to purchase from the committee the bonds of the Bay Shore Terminal Company, hereinbefore mentioned, and the said committee had subsequently sold the said bonds to Smith & Co. at $400 for each $1,000 bond, and they had received $1,146.65 in the settlement of the purchase of the Terminal Company's property, whereby he, Sweeney, was entitled to the difference of $746.65 on each bond by way of damages. That is the sole relief that Sweeney asks in this suit as against the defendants Foster, Simcoe and Cobb, a claim which is purely legal in character, without any sort of equitable feature attached thereto; wherefore, if the said committee were in any sense liable to Sweeney, which they of course deny, he could sue them at law for the amount of his claim as specifically set out in the amended bill.

Moreover, upon the face of the amended bill, the complainant had no cause of action and could maintain no action whatever against Foster, Simcoe and Cobb arising out of the transactions set out in the amended bill, until he had obtained a reassignment of his alleged contract with them which he had assigned to Zell and Van Dyke, and with which assignment Foster, Simcoe and Cobb were never at any time concerned, and Zell and Van Dyke are not before the court in this cause.

Section 2415-a of the Code, relied on by appellant, has no application to the case. The provision of that section is, that when the legal title to any claim or chose in action, for the enforcement of the collection of which a court of equity has jurisdiction, is in one person, and the beneficial equitable title is in another, the latter may either maintain a suit in the name of the holder of the legal title, for his use and benefit, or in his own name, to enforce collection of the same, and in either case the beneficial equitable owner shall be deemed the real plaintiff, and shall be alone liable for costs. Now in this case not only the legal title to the contract upon which appellant brings this suit has been transferred, but also the equitable title, to Zell and Van Dyke, who have never appeared in this cause or had legal process served upon them to appear; and as the holders of said contract, as plainly appears upon the face of appellant's bill, they have refused to reassign to the appellant. Wherefore the respective rights of the present and the former holders of the contract are necessarily involved in this litigation, and must necessarily be determined, but before there can be any adjudication of the liability of the appellees, Foster, Simcoe and Cobb, the rights of Zell and Van Dyke under the contract in question have first to be determined, and they are not before the court or within its jurisdiction. There is nothing in the bill to connect the appellees with the transactions that resulted in the assign-

ment by the appellant to Zell and Van Dyke, and therefore it is not averred that these two groups of defendants have acted in concert; in other words, appellees have no interest in a litigation to compel Zell and Van Dyke to reassign the contract in question to the appellant, nor have Zell and Van Dyke any interest in the litigation in which the appellant seeks to recover damages from the appellees, sustained as he alleges by reason of their transaction with Smith & Co.

The case, therefore, comes plainly within the control of the decision of this court in *Bonsal* v. *Camp,* 111 Va. 595, 69 S. E. 978, where it appears from the opinion of Keith, P., that Camp filed his bill in the Circuit Court of the city of Norfolk against Bonsal, in which he prayed the rescission of a deed made by Bonsal to him for a tract of land in the State of North Carolina, upon the ground that he was deceived into making the purchase by fraudulent misrepresentations upon the part of Bonsal and his agent, one Brewer; that Bonsal, the sole defendant, demurred to the bill because Brewer was not made a party defendant, and also answered the bill. The bill further sets out the grounds upon which the complainant sought the relief he asked, but it was made to appear that Brewer became, under the contract of sale, entitled to one-twentieth part of the price of the land sold by Bonsal to Camp. Brewer was not made a party defendant to the bill, and, therefore, never appeared in the cause. Camp was a resident of Florida, Brewer a resident of Tennessee, Bonsal a resident of Virginia, and the subject matter of controversy was situated in the State of North Carolina. In disposing of the demurrer of Bonsal to the bill, the opinion by Mr. Justice Miller, in *Barney* v. *Baltimore City,* 6 Wall. 284, 18 L. Ed. 825, is quoted with approval, as follows: "There is a class of persons having such relations to the matter in controversy, merely formal or otherwise, that while they may be called

64

proper parties, the court will take no account of the omission to make them parties. There is another class of persons whose relations to the suit are such, that if their interest and their absence are formally brought to the attention of the court, it will require them to be made parties, if within its jurisdiction, before deciding the case; but if this cannot be done, it will proceed to administer such relief as may be in its power between the parties before it. And there is a third class, whose interests in the subject matter of the suit, and in the relief sought, are so bound up with that of the other parties that their legal presence as parties to the proceeding is an absolute necessity, without which the court cannot proceed. In such cases the court refuses to entertain the suit, when these parties cannot be subjected to its jurisdiction." It was held that the case made by Camp's bill fell within the third class of cases mentioned in the opinion of Mr. Justice Miller—in other words, that Brewer was a necessary party to the litigation and that, as he was not before the court, the relief sought could not be decreed. In that case several authorities are also cited, which sustain the general proposition that all persons interested in the subject matter of a suit and to be affected by its results are necessary parties. The rule was there also laid down, with respect to the rescission of contracts, that in seeking a remedy which calls for the highest and most drastic exercise of the power of a court of chancery—to annul and set at naught the solemn contracts of parties—there must be first a sufficient averment of facts showing the plaintiff entitled in equity to the relief which he seeks, and satisfactory proof of these facts, to justify the interposition of a court; and the opinion then proceeds: "and in addition to all this, the court must be able substantially to restore the parties to the position which they occupied before they entered into the contract."

In the case here, the title of Zell and Van Dyke in and to the alleged contract between the appellant and the appellees was obtained in a legal, business-like way, and appellant received compensation therefor. His assignment of the contract was absolute and carried with it all right, title and interest he had in and to any benefits under the contract, and he acknowledges the receipt of an adequate legal consideration for the assignment. It further appears from the amended bill and the exhibits therewith that the appellant subsequently recognized and ratified his former assignment of the contract to Zell and Van Dyke, so that there could be no question that the contract passed from the appellant absolutely and became vested in Zell and Van Dyke. Clearly, therefore, the case made is not one in which the court could even substantially restore the parties to the position which they occupied before the assignment of the contract by the appellant to Zell and Van Dyke. No decree that the court could have entered in this case against Zell and Van Dyke in favor of appellant would relieve the appellees from liability to be again sued by Zell and Van Dyke upon the same contract and the same cause of action; wherefore, Zell and Van Dyke are necessary parties to this litigation, without whose presence complete justice cannot be done the appellees; and it necessarily follows that the decree of the court of law and chancery upon the demurrer should be affirmed.

*Affirmed.*