# CIRCUIT COURT OF FAIRFAX COUNTY

The Driggs Co., L.L.C.

v.

P. J. Dick, Inc., et al.

November 6, 2007

Case No. CL-2006-1349

BY JUDGE ARTHUR B. VIEREGG

This matter came before me on September 19, 2007, on the Plea in Bar filed by P. J. Dick, Inc., and its sureties ("Defendants"). At the conclusion of the hearing, I took the matter under advisement. Defendants' Plea presents two issues. The first is whether the Driggs Company filed this suit in its own name or, in the alternative, whether Arch Insurance Company, Driggs' surety, filed this suit in Driggs' name. Because I find the latter to be true, the second issue is whether Arch is authorized to bring this suit in Driggs' name. For the reasons set forth below, I conclude that Arch could assert Driggs' claims against the Defendants in Driggs' name and therefore, Defendants Plea in Bar is overruled.

*Background*

P. J. Dick ("PJD") was the general contractor on the construction of Briar Woods High School ("the Project"). On December 4, 2003, PJD entered into a subcontract with the Driggs Company to perform site clearing and earthwork on the Project. Pursuant to the subcontract, Driggs provided PJD with payment and performance bonds issued by Arch Insurance Company.

As a condition for issuing the bonds, Arch required Driggs to sign a General Indemnity Agreement ("GIA"). The GIA provided that, if Driggs defaulted on the sub-contract, "Driggs' rights under all Bonded Contracts including . . . (a) their right, title, and interest in all sub-contracts . . . (c) all

claims and causes of action against any parties to the Bonded Contract(s) . . . [and] (d) any and all sums due, or to become due, under the Bonded Contracts" were assigned to Arch. (GIA ¶ 7.) The GIA defined "default" as, among other events, "[a]n instance or condition in which [Driggs was] declared in default on any Bonded Contract." (GIA at 1.)

At the hearing, representatives from both Arch and Driggs testified they intended the GIA to provide that, in the event of default, the only rights conveyed to Arch would be (1) the right to litigate, in Driggs' name, Driggs' causes of action arising from the subcontract, and (2) the right to retain as much of the proceeds from those causes of action as needed to reimburse Arch for the losses it incurred as a result of issuing the bonds.

On February 4, 2005, PJD declared Driggs in default of the sub-contract relating to the Briar Woods High School Project. On March 14, 2005, Driggs and Arch entered into an Assignment and Forbearance Agreement ("AFA"). Pursuant to the AFA, Driggs assigned to Arch "the absolute right and entitlement, in its sole discretion, to prepare, present, prosecute, and negotiate any and all of Driggs' claims and/or causes of action on Driggs' behalf and in Driggs' name." (AFA ¶ 3.) In addition, Driggs assigned to Arch sufficient proceeds from those causes of action to reimburse Arch for the losses it incurred as a result of issuing the surety bonds. (AFA ¶ 2.) Any proceeds in excess of the amount needed to reimburse Arch were to remain Driggs' property. (AFA ¶ 2.)

Arch then filed the instant action in Driggs' name against PJD and its sureties on February 2, 2006, alleging (1) breach of contract, (2) wrongful termination, and (3) action on payment bond. Defendants' Plea in Bar followed.

*Analysis*

As a preliminary matter, it is necessary to determine whether Driggs filed this suit in its own name or whether Arch filed this suit in Driggs' name. At the hearing, Plaintiff's Counsel represented to the Court that Arch retained him to file this suit in Driggs' name. Both Mr. Ken Givens, Arch's Assistant Vice President of Surety Claims, and John Driggs, owner of the Driggs Company, confirmed the same. Defendants failed to present evidence contesting the veracity Mr. Givens' and Mr. Driggs' testimony. Defendants' standing argument is thus inapposite. Accordingly, the issue dispositive of Defendants' Plea is whether Arch, as assignee of Driggs' claims under the subcontract, may assert those claims in Driggs' name.

334

Virginia courts have consistently recognized that an assignee may maintain an action at law in the name of its assignor. *Stegal v. Union Bank & Federal Trust Co.*, 163 Va. 417, 438, n. 4, 176 S.E. 438 (1934) ("The assignee was from an early time permitted to sue at law in the name of the assignor."); *Cox's Ex'rs v. Crockett*, 92 Va. 50, 56, 22 S.E. 840 (1895) ("[W]hen the right to receive the money due on a claim is in the assignee, he has the right to bring an action at law in the name of his assignor, and he will be regarded, even by a court of law, as the substantial plaintiff in the action."); *Tyler v. Ricamore*, 87 Va. 466, 12 S.E. 799 (1891) ("There is . . . no doubt as to the right of the assignee to maintain the action for his benefit in the name of the assignor.").

Defendants contend, however, that *Stegal, Cox's Ex'rs*, and *Tyler* and their progeny are inapplicable to cases, such as the present one, which putatively involve a complete assignment of the assignor's rights. I find Defendants' argument unpersuasive. The case law cited by Defendants plainly does not support their position.

In support of their argument, Defendants cite four cases: *Clarkson v. Doddridge*, 55 Va. (14 Gratt.) 42, 44 (1857); *Braddock, L.C. v. Board of Supervisors of Loudoun County*, 268 Va. 420, 601 S.E.2d 552 (2004); *Nigh v. Koons Buick Pontiac GMC, Inc.*, 2001 WL 35963875 (E.D. Va. Aug. 15, 2001); and *Sweeney v. Foster*, 112 Va. 499, 507, 71 S.E. 548 (1911). *Clarkson* does not undermine *Stegal, Cox's Ex'rs*, or *Tyler*; in fact, *Clarkson* explicitly acknowledges that an assignee of a right to receive money "has a right to bring an action at law in the name of his assignor." *Braddock* is plainly distinguishable from the instant case. The relevant language in *Braddock* states "[a]n agent may not sue in his principal's behalf without express authority from the principal, or unless authorized by statute to do so." 268 Va. at 425. However, Arch does not purport to be Driggs' agent. Rather, Arch is asserting its equitable right to bring Driggs' causes of action against PJD and its sureties. Finally, *Nigh* and *Sweeny* merely stand for the proposition that an *assignor* "could not sue on rights assigned to [the assignee.]" *Nigh* at *4. Here, the issue presented is whether an assignee may sue in the name of its assignor. Therefore, *Nigh* and *Sweeny* are inapplicable.

Moreover, even if Defendants were correct that an assignee can only sue in the name of its assignor where there as been a partial assignment, the evidence demonstrates Driggs only assigned to Arch sufficient proceeds from its causes of action against the Defendants to reimburse Arch for any expenses it incurred. Accordingly, this case only involves the partial assignment of a security interest and thus is governed by *Stegal, Cox's Ex'rs*, and *Tyler*.

In Virginia, "the true test for determination of the proper law of a contract is the intent of the parties. . . . [and] this intent whether express or implied, will always be given effect." *Tate v. Hain,* 181 Va. 402, 410, 25 S.E.2d 321 (1943). Even where the contract language is unambiguous, extrinsic evidence may be considered when determining the intent of parties to a contract. *Lemke v. Sears, Roebuck & Co.,* 853 F. 2d 253, 255 (4th Cir. 1988). For instance, "where parties have entered into more than one document relating to a business transaction, these documents should be interpreted together, each one assisting in determining the meaning intended to be expressed by the others." *American Realty Trust v. Chase Manhattan Bank, N.A.,* 222 Va. 392, 403, 281 S.E.2d 825 (1981)).

Pursuant to the GIA, when PJD declared Driggs in default on February 4, 2005, Driggs assigned "all claims and causes of action" arising from the subcontract to Arch. However, both Mr. Givens and Mr. Driggs credibly testified that they understood this provision to transfer to Arch only so much of the contract proceeds as would be necessary to reimburse Arch for any losses it incurred as a result of issuing the bonds. In addition, the APA, which both modifies and clarifies the provisions of the GIA, makes plain that any proceeds in excess of the amounts necessary to reimburse Arch for its losses and expenses were to remain "the sole property of Driggs." (AFA ¶ 2.)

Consonant with the circumstances giving rise to the assignment and the business relationship between Driggs and Arch, the interpretation proposed by Driggs and Arch comports with the fundamental purpose of their indemnity agreement, i.e. to protect Arch from loss. Arch is indemnified from loss so long as it is reimbursed for all losses it incurs as a result of issuing the bonds.

Based on the evidence presented, I find Arch and Driggs intended the GIA to only assign to Arch a security interest in its claims against PJD. The rules of contract construction require that I interpret the contract to give effect to that mutual intent. As such, I conclude Driggs only partially assigned its claims under the subcontract to Arch. Therefore, Arch, as the assignee of a security interest in Driggs' claims arising under the subcontract, may assert those claims at law in Driggs' name.

Defendants' Plea in Bar is overruled.