PRESENT: Kinser, C.J., Lemons, Goodwyn, Millette, and Mims, JJ., and Koontz, S.J.

MICHAEL E. SISKA REVOCABLE TRUST,
BY MICHAEL SISKA, TRUSTEE,
DERIVATIVELY IN THE RIGHT AND ON
BEHALF OF MOTEL INVESTMENTS OF
CHRISTIANSBURG, LLC

v.    Record No. 092491    OPINION BY JUSTICE DONALD W. LEMONS
                                        September 16, 2011
MILESTONE DEVELOPMENT, LLC, ET AL.

FROM THE CIRCUIT COURT OF MONTGOMERY COUNTY
Ray W. Grubbs, Judge Designate

In this appeal, we consider whether a limited liability company ("LLC") must be joined as a necessary party in a derivative action brought by a member.

I.    Facts and Proceedings

In 1998, Motel Investments of Christiansburg, LLC ("MIC") was formed for the purpose of building and operating a hotel in Christiansburg, Virginia. The original members of MIC were the Michael E. Siska Revocable Trust ("the Trust"), by Michael Siska ("Siska"), trustee, Thomas E. Dowdy, Jason M. Dowdy, and Byron K. Dowdy. Under MIC's Operating Agreement, the Trust had a 49% membership interest, with 17% interest each to the other three members. MIC began to operate the hotel in 2002.

In April 2004, the members of MIC executed a first amendment of the Operating Agreement to reflect, in part, certain assignments of membership interests. Under this amendment, Jane S. Dowdy, Michael Siska's daughter and wife of

Thomas Dowdy, became a member with a 49% membership interest. The Trust maintained its 49% membership interest, and Thomas Dowdy's membership interest was reduced to 2%. These membership interests were "subject to determination by binding arbitration pursuant to an agreement of even date herewith."

In 2006, the Trust initiated arbitration to recalculate the membership interests, claiming that it had a membership interest of 92.65%. In a letter opinion dated September 6, 2006, the arbitrator determined that, based upon the parties' adjusted net capital contributions, the Trust held only a 43% membership interest in MIC, and the combined membership interest of Thomas and Jane Dowdy was 57%. Later that year, Thomas and Jane Dowdy transferred, without the Trust's involvement, MIC's assets to Milestone Development, LLC ("Milestone"), the Dowdys' family company.

On November 6, 2008, the Trust filed an amended complaint derivatively on behalf of MIC against Milestone, Thomas Dowdy, Jane Dowdy, Byron Dowdy, and Jason Dowdy (collectively, "the Defendants"). In the amended complaint, brought under Code § 13.1-1042, the Trust alleged that the transfer of assets to Milestone was not in the best interests of MIC or its members. The Trust alleged breach of fiduciary duty, breach of contract, unlawful distribution, conversion, intentional interference with business expectancy, statutory conspiracy, and common law

2

conspiracy, and sought to recover $10 million, as well as treble and punitive damages. However, the Trust did not join MIC as a party to the derivative action.

The Defendants filed demurrers and pleas in bar asserting, among other things, that the Trust lacked standing to assert its claims because it did not fairly and adequately represent the interests of MIC's members as required by Code § 13.1-1042. Following a hearing, the circuit court stated in a letter opinion that there was "significant antagonism" between the Trust controlled by Siska and the Defendants and that the derivative action was motivated by Siska's "ultimate objective" to seize control of MIC.[*]

Additionally, the circuit court stated that Siska's request for $10 million in treble damages and punitive damages "flies in the face of [his] assertion that he fairly represents the interests of all parties." The circuit court noted that "[t]he history of the relationship between the parties shows a longstanding economic antagonism between [Siska] and the other shareholders of MIC," and that "[t]here is no showing that vindictiveness has been put aside." The circuit court held that "Siska Trust lacks standing to maintain this derivative action on behalf of MIC" because "Siska cannot fairly represent

---

[*] The trial court interchangeably referred to the Trust and Siska as the same entity, presumably because of the absolute control of the Trust by Siska.

the interests of the defendant shareholders." Therefore, the court sustained the Defendants' pleas in bar and dismissed the Trust's amended complaint.

The Trust timely filed its notice of appeal to this Court, and we granted the Trust's appeal on the following assignments of error:

1. In this case of first impression, the trial court erred by ruling that to have derivative standing to enforce the rights of a Virginia limited liability company in a suit under Code section 13.1-1042, a plaintiff must represent the interests of not only the company but also of the other two members – even when those members are also the defendants who plundered the company's business for personal gain.

2. The trial court made unjustifiable inferences from the pleadings that the plaintiff had "economic antagonism" or "vindictiveness" toward the defendant-members, and then misapplied Virginia law to find that those motives precluded derivative standing to enforce valid, corporate rights to restore the company's business and assets from those same defendants.

On appeal, Milestone asserts that Siska has failed to name a necessary party to this litigation, namely, MIC, and maintains that the appeal should be dismissed for this reason.

## II.  Analysis

### A. Necessary Party Doctrine

We must begin our analysis with consideration of the necessary party doctrine in Virginia. One hundred years ago we stated, "[a]ll persons interested in the subject matter of a suit and to be affected by its results are necessary parties."

4

_Bonsal v. Camp_, 111 Va. 595, 598, 69 S.E. 978, 979 (1911) (internal quotation marks and citation omitted).  In _Bonsal_, the lawsuit had been met with a demurrer because a particular party had not been joined.  _Id._ at 596, 69 S.E. at 978.  The Court cited with approval an opinion from the United States Supreme Court:

> "There is a class of persons having such relations to the matter in controversy, merely formal or otherwise, that while they may be called proper parties, the court will take no account of the omission to make them parties. There is another class of persons whose relations to the suit are such, that if their interest and their absence are formally brought to the attention of the court, it will require them to be made parties, if within its jurisdiction, before deciding the case; but if this cannot be done, it will proceed to administer such relief as may be in its power between the parties before it. And there is a third class, whose interests in the subject matter of the suit, and in the relief sought, are so bound up with that of the other parties, that their legal presence as parties to the proceeding is an absolute necessity, without which the court cannot proceed. In such cases the court refuses to entertain the suit, when these parties cannot be subjected to its jurisdiction."

_Id._ at 597-98, 69 S.E. at 978-79 (quoting _Barney v. Baltimore City_, 73 U.S. 280, 284 (1867)).  Notably, the matter was not considered to be a question of subject matter jurisdiction; rather, the court "refuses to entertain the suit."  _Bonsal_, 111 Va. at 598, 69 S.E. at 979.  Significantly, in _Bonsal_, the remedy was not dismissal for lack of jurisdiction; rather, "the

5

cause [was] remanded for further proceedings not inconsistent with the views herein expressed."  Id. at 601, 69 S.E. at 980.

In Sweeney v. Foster, 112 Va. 499, 71 S.E. 548 (1911), the Court entertained another case involving a challenge to the suit based upon failure to name a necessary party.  Once again the Court reiterated, "[i]n such cases the court refuses to entertain the suit . . . ."  Id. at 506, 71 S.E. at 550.

In The Buchanan Co. v. Smith's Heirs, 115 Va. 704, 80 S.E. 794 (1914), once again considering a case where it was alleged that a necessary party had not been joined, we cited a legal treatise on equity procedure as follows:

> Necessary parties include all persons, natural or artificial, however numerous, materially interested either legally or beneficially in the subject matter or event of the suit and who must be made parties to it, and without whose presence in court no proper decree can be rendered in the cause. This rule is inflexible, yielding only when the allegations of the bill disclose a state of case so extraordinary and exceptional in character that it is practically impossible to make all parties in interest parties to the bill, and, further, that others are made parties who have the same interest as have those not brought in, and are equally certain to bring forward the entire merits of the controversy as would the absent persons. This cardinal principle governing as to parties to suits in equity is founded upon the broad and liberal doctrine that courts of equity delight to do complete justice by determining the rights of all persons interested in the subject matter of litigation, so that the performance of the decree rendered in the cause may be perfectly safe to all who are required to obey it, and that further litigation touching

6

> the matter in dispute may be prevented. On the
> other hand, persons wholly without any interest
> in the subject matter of the suit are neither
> necessary nor proper parties thereto . . .
>
> It follows from this classification, that
> necessary parties must be made parties to the
> suit . . . .

Id. at 707-08, 80 S.E. at 795 (internal quotation marks and citation omitted).

In Buchanan Co., the trial court had dismissed the amended bill and we held that the dismissal under the circumstances was proper, however, we stated, "[u]pon these considerations we are of opinion that the decree of the circuit court should be affirmed, subject only to the amendment that the dismissal of the amended bill must be without prejudice." Id. at 710, 80 S.E. at 796. Quite clearly, we did not resolve the matter by declaring that the decree was void or that the court lacked subject matter jurisdiction.

In the case of Harris v. Deal, 189 Va. 675, 54 S.E.2d 161 (1949), we did use the word "void" to describe a particular decree that was attacked based upon the absence of certain necessary parties; however, the context of the case is critical to the usage of the word. We distinguished between subject matter jurisdiction and personal jurisdiction as follows:

> It is necessary to the validity of its judgment
> that a court must have jurisdiction over the
> subject matter and over the necessary parties.
> It has no jurisdiction to act outside the limits

7

of the law or mode of procedure, or beyond the issues in the pleadings. No judicial proceeding can deprive a man of his property without giving him an opportunity to be heard in accordance with the provisions of the law, and if a judgment is rendered against him without such opportunity to be heard, it is absolutely void. A void judgment is in legal effect no judgment. By it no rights are divested and from it no rights are obtained. All claims flowing out of it are void. It may be attacked in any proceeding by any person whose rights are affected.

Id. at 686-87, 54 S.E.2d at 166 (citations omitted). Clearly, the Court did not decide an issue of subject matter jurisdiction. The issue involved the failure to join particular parties and the inability to enforce such a decree against those parties.

Recently, we confirmed our understanding of the necessary party doctrine in Jett v. DeGaetani, 259 Va. 616, 620, 528 S.E.2d 116, 118 (2000), where we again favorably cited Bonsal by noting that in cases involving the absence of necessary parties, "the court refuses to entertain the suit, when these parties cannot be subjected to its jurisdiction." (Quoting Bonsal, 111 Va. at 597-98, 69 S.E. at 979.)

However, there are some opinions of the Court that have referred to a judgment rendered in the absence of a necessary party as "absolutely void." See, e.g., Atkisson v. Wexford Assocs., 254 Va. 449, 456, 493 S.E.2d 524, 528 (1997). Such language suggests that the infirmity relates to subject matter

8

jurisdiction, an argument that is advanced by Milestone in the case before us.

Our opinion in McDougle v. McDougle, 214 Va. 636, 203 S.E.2d 131 (1974) is informative. In that case, the trial court held that a particular grantor lacked sufficient mental capacity to execute several deeds and by its final decree set the deeds aside. Id. at 637, 203 S.E.2d at 132. Unfortunately, the grantor had not been joined as a party to the litigation. Id. at 637, 203 S.E.2d at 133. Reversing the trial court, we stated,

> Generally, a court cannot render a valid
> judgment when necessary parties to the
> proceedings are not before the court. . . .
>
> The only exceptions to the rule occur where
> it is "practically impossible" to join all
> parties in interest, and the absent parties are
> represented by others having the same interests,
> or where an absent party's interests are
> separable from those of the parties before the
> court, so that the court may enter a decree
> without prejudice to the rights of the absent
> party.

Id. (internal citations omitted).

The conclusion that must be reached from McDougle is that the necessary party doctrine does not implicate subject matter jurisdiction. If the doctrine involved subject matter jurisdiction, the absence of a necessary party would, by definition, deprive the court of the power to render a decree. There could not logically be exceptions. However, because the

9

Court referred to exceptions, the doctrine obviously refers to questions of personal jurisdiction and ability to render complete relief in the case. In this regard, the matter involves the evaluation by the court whether to exercise its subject matter jurisdiction. Significantly, our remedy was, once again, to remand the case "in order that [the grantor] may be made a party thereto and further proceedings may be conducted regarding the property." Id. at 638, 203 S.E.2d at 133.

Consideration of statutory provisions further demonstrates that the absence of a necessary party does not implicate subject matter jurisdiction. Code § 8.01-5(A) provides:

> No action or suit shall abate or be defeated by the nonjoinder or misjoinder of parties, plaintiff or defendant, but whenever such nonjoinder or misjoinder shall be made to appear by affidavit or otherwise, new parties may be added and parties misjoined may be dropped by order of the court at any time as the ends of justice may require.

A partial history of this section is given in Hogan v. Miller, 156 Va. 166, 171-72, 157 S.E. 540, 541-42 (1931):

> By Acts of Assembly, 1893-4, page 489, c. 421, section 3261 of the Code of 1887 (which provided for the filing of a plea in abatement when it appeared to the court there was a non-joinder of necessary parties defendant), was amended. By that act it was provided that whenever it was made to appear, by the pleading or otherwise, that in any suit or action there was a misjoinder of parties, plaintiff or defendant, the court was empowered to abate the action as

10

to any party improperly joined, and to proceed with the suit or action. The act of 1893-94 was amended by Acts of 1895-96 (chapter 423), but the provision relating to misjoinder of parties was not affected. In the revision of the Code in 1919 the revisors inserted section 6102 as it now reads. The purpose of that section was to extend the power of the court by further providing that in any suit or action when it appeared there was a non-joinder of necessary parties, then the court, in the exercise of its discretion, could compel the joinder of such parties. Defendant contends that the change was wrought for the specific purpose of ending in one suit or action the rights of a plaintiff and the liabilities of those who otherwise might be defendants in future litigation. No such intention of the legislature is indicated by the language employed. The purpose of the statute was to provide a simple method for joining as co-defendant a necessary party. . . . The effect of the statute as to non-joinder is that the omission of a defendant necessary for the maintenance of the plaintiff's action can be corrected by the method provided.

Additionally, Rule 3:9A was added to the Rules of Court in Virginia effective July 1, 1975. The Revisors' Note from 1977, when the civil procedure code was placed in its current general form, read as follows:

Section 8.01-5 carries forward the policy of former § 8-96 by providing that parties may be added to or dropped from an action without prejudice until all parties necessary for the just disposition of the case are before the court. See also Rules 2:15, 3:9A and 3:14 which provide for the addition of parties to an action.

Omitted from § 8.01-5 are those parts of former § 8-96 which exempt a party from being added if the action could not be maintained against him for specified reasons – i.e. a new

11

party who was neither a resident of the Commonwealth nor subject to service of process therein, or where the action was barred by the statute of limitation or under the provisions of Chapter 1 of Title 11 (Contracts – General Provisions). The substance of these provisions is better implemented under Rule 3:9A.

When Code § 8.01-5 was revised in 1977, the Rule of court being referred to read almost verbatim as it does today in what is now Rule 3:12:

Rule 3:12. Joinder of Additional Parties
(a) Persons to Be Joined if Feasible. – A person who is subject to service of process may be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest of the person to be joined. If such a person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff.

(b) Method of Joinder. – A motion to join an additional party shall, subject to the provisions of Rule 1:9, be filed with the clerk within 21 days after service of the complaint and shall be served on the party sought to be joined who shall thereafter be subject to all provisions of these Rules, except the provisions requiring payment of writ tax and clerk's fees.

(c) Determination by Court Whenever Joinder Not Feasible. – If a person as described in subdivision (a) hereof cannot be made a party,

12

the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the absent person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

(d)  Pleading Reasons for Nonjoinder. – A pleading asserting a claim for relief shall state the names, if known to the pleader, of any persons as described in subdivision (a) hereof who are not joined, and the reasons why they are not joined.

By its express terms, Rule 3:12 was intended to govern the exercise of trial court discretion in dealing with cases where a necessary party has not been joined.  Rule 3:12(c) could not be clearer that such a matter is not void for lack of subject matter jurisdiction. The trial court has discretion to take steps to correct the defects and to decide whether to permit the case to continue with the existing parties after consideration of the factors spelled out in that subsection or to refuse to exercise its jurisdiction.

Additionally, a decision of the United States Supreme Court expounding upon the dynamics of Federal Rule of Civil Procedure 19 involving indispensible parties is helpful:

13

> The decision whether to dismiss (i. e., the decision whether the person missing is "indispensable") must be based on factors varying with the different cases, some such factors being substantive, some procedural, some compelling by themselves, and some subject to balancing against opposing interests. Rule 19 does not prevent the assertion of compelling substantive interests; it merely commands the courts to examine each controversy to make certain that the interests really exist. To say that a court "must" dismiss in the absence of an indispensable party and that it "cannot proceed" without him puts the matter the wrong way around: a court does not know whether a particular person is "indispensable" until it has examined the situation to determine whether it can proceed without him.

Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 118-19 (1968).

In Fox v. Deese, 234 Va. 412, 362 S.E.2d 699 (1987), considered after the development of these Rules and involving a plaintiff's failure to name purportedly necessary parties (his alleged partners in a concert venture), we stated:

> Whether the court should have dismissed the action based on nonjoinder of parties plaintiff is answered by Code § 8.01-5(A) and Rule 3:9A.
>
> . . . .
>
> Clearly, the alleged nonjoinder of parties plaintiff was not a proper ground for dismissing this action. Indeed, if the defendants had desired to pursue the matter, they and the trial court should have followed the procedures set forth in the statute and the rule for determining whether the purported partners were necessary parties.

Id. at 421-22, 362 S.E.2d at 704-05.

14

Accordingly, we hold that the necessary party doctrine does not implicate subject matter jurisdiction, and we reject Milestone's argument that it does. Nonetheless, we must determine if we should refuse to exercise our subject matter jurisdiction.

## B. Must the LLC be Named as a Party?

The Trust asserts that "[i]t is not necessary to join MIC as a nominal defendant, as it is already the real plaintiff, all of its members have always been parties, and its interests are represented in the litigation." In support of its argument, the Trust cites the "pragmatic" opinion of the Iowa Supreme Court:

> Of course, though the corporation is ordinarily named a defendant, it is the real plaintiff in interest, and beneficiary of any judgment recovered. For these reasons and because apparently there are no stockholders other than the two who are parties in this equity action, we proceed as though the corporation is properly before the court. A court in equity may determine and decree as to the rights of the parties regardless of their positions as plaintiffs or defendants, and in a proper case may adjust rights and award relief as between co-plaintiffs and co-defendants.

Holi-Rest, Inc. v. Treloar, 217 N.W.2d 517, 523 (Iowa 1974) (citations omitted). We decline to adopt the Iowa approach and note that we have previously answered this question.

15

A limited liability company that is the subject of a derivative action must be a party to the suit. As the United States Supreme Court has noted:

> The corporation is a necessary party to the [derivative] action; without it the case cannot proceed. Although named a defendant, it is the real party in interest, the stockholder being at best the nominal plaintiff. The proceeds of the action belong to the corporation and it is bound by the result of the suit.

Ross v. Bernhard, 396 U.S. 531, 538 (1970). That this case involves a limited liability company is a distinction without substantive difference. We have previously stated that a derivative action against a corporation

> is maintained directly for the benefit of the corporation, and the final relief, when obtained, belongs to the corporation, and not to the stockholder plaintiff. The corporation is therefore an indispensably necessary party, not simply on the general principles of equity pleading, in order that it may be bound by the decree, but in order that the relief, when granted, may be awarded to it, as a party to the record, by the decree.

Mount v. Radford Trust Co., 93 Va. 427, 431, 25 S.E. 244, 245 (1896) (internal quotation marks and citation omitted). See also Simmons v. Miller, 261 Va. 561, 573, 544 S.E.2d 666, 674 (2001) ("A derivative action is an equitable proceeding in which a shareholder asserts, on behalf of the corporation, a claim that belongs to the corporation rather than the shareholder.").

16

Similarly, any claim or judgment in a derivative action against a limited liability company belongs to the limited liability company, "a legal entity entirely separate and distinct from the shareholders or members who compose it," including the member who brings the derivative action. Remora Investments, L.L.C. v. Orr, 277 Va. 316, 322, 673 S.E.2d 845, 847 (2009); Mission Residential, LLC v. Triple Net Props., LLC, 275 Va. 157, 161, 654 S.E.2d 888, 891 (2008).

## III. Conclusion

In accordance with our prior treatment of the failure to join necessary parties, we will not entertain this appeal on the merits because MIC is a necessary party to this proceeding and has not been joined. We will reverse the judgment of the circuit court and remand for further proceedings not inconsistent with this opinion.

Reversed and remanded.

17