PRESENT:  All the Justices

JAMES C. ST. JOHN, INDIVIDUALLY AND
AS TRUSTEE OF THE JCS TRUST, ET AL.

v.  Record No. 200068

OPINION BY
JUSTICE STEPHEN R. McCULLOUGH
February 25, 2021

LAURA G. THOMPSON, INDIVIDUALLY
AND AS EXECUTOR OF THE ESTATE OF
ERNEST STUART ELSEA, II, DECEASED,
ET AL.[*]

FROM THE CIRCUIT COURT OF CLARKE COUNTY
Alexander R. Iden, Judge

James Charles St. John challenges the circuit court's determination that he must pay

attorney's fees to the person he defrauded.  St. John argues that, in imposing the fees, the circuit

court erroneously interpreted our decision in *Prospect Dev. Co., Inc. v. Bershader*, 258 Va. 75,

92 (1999).  St. John also contends that the circuit court erred because an indispensable party, a

trust, was not made a party to the litigation.  We disagree with both contentions and, accordingly,

we will affirm the judgment below.

BACKGROUND

Ernest Stuart Elsea, II was afflicted with numerous health problems.  He had sustained

several strokes and a heart attack.  As a consequence, he suffered from cognitive deficits.  He

also had auditory and visual problems.  Elsea had limited education and below average

intellectual abilities.  These circumstances left him vulnerable to undue influence or coercion.

In 2015, St. John moved next door to Elsea.  St. John befriended Elsea.  After one of

Elsea's brothers committed suicide, St. John and Elsea became especially close.

---

[*] After we granted this appeal, Mr. Elsea passed away.  Accordingly, we granted a
motion to substitute the executors of his estate as the parties to the litigation.

Elsea confided to St. John his fear that his family might take his property and place him in a nursing home. During the course of his conversations with Elsea, St. John learned that Elsea was the beneficiary of a number of trusts and that he owned an extensive firearm collection with a value of almost $100,000. St. John persuaded Elsea to transfer these firearms to a firearm trust St. John established and controlled, the JCS Trust. This transfer, St. John said, would prevent Elsea's family from gaining possession of the firearms. St. John told Elsea that he would return the firearms upon request and that Elsea would retain control over them.

St. John capitalized on Elsea's fear that his family would place him in a nursing home to obtain control over Elsea's property. St. John had Elsea sign a durable power of attorney. St. John did explain what the form was, but never read it to him or explained how it could be used. Elsea signed the document, believing that St. John was acting in Elsea's best interest. Using this power of attorney, St. John then obtained trust documents and other estate planning documents. St. John persuaded Elsea to assign additional property held by the Ernest Stuart Elsea, II Trust U/A to the firearm trust St. John controlled. St. John also prepared a letter to Elsea's estate planning attorney informing him his services were no longer needed and that he was revoking appointments made under a number of estate planning documents. Elsea signed this letter. Again exploiting Elsea's fear that his family would take his assets and place him in a nursing home, St. John induced Elsea to sign a codicil to his will which named St. John and St. John's partner, Katherine Cole, as beneficiaries.

After St. John moved, his grip on Elsea evidently loosened and Elsea revoked St. John's power of attorney. In response, St. John revoked Elsea's appointment to the JCS Trust. This had the effect of removing from Elsea any control of the title to the firearms in the JCS Trust. On

Elsea's behalf, his representatives then asked St. John to return the firearms to Elsea, but St. John refused.

Elsea, through his representatives Laura and W.R. Thompson, filed an amended complaint seeking, in Count I, an accounting and a recovery of the firearms, alleging breach of fiduciary duty in Count II, and alleging fraud and undue influence in Count III. The circuit court found that St. John was required to return the firearms to Elsea because he had defrauded Elsea. The court rejected Counts I and II. The court ordered St. John to either return the firearms or to pay Elsea the value of the firearms. Finally, relying on *Prospect Dev. Co.*, the circuit court ordered St. John and the JCS Trust, jointly and severally, to pay attorney's fees in the amount of $108,211. St. John appeals from this decision.

I.    THE CIRCUIT COURT PROPERLY AWARDED FEES UNDER *PROSPECT DEV. CO. V. BERSHADER.*

"It is well established that Virginia follows the 'American Rule,' which provides that '[g]enerally, absent a specific contractual or statutory provision to the contrary, attorney's fees are not recoverable by a prevailing litigant from the losing litigant.'" *Chacey v. Garvey*, 291 Va. 1, 8 (2015) (quoting *REVI, LLC v. Chicago Title Ins. Co.*, 290 Va. 203, 213 (2015)). That rule, however, does not apply in every instance.

Historically, recovery of attorney's fees in chancery court differed from recovery of attorney's fees in common law courts. "Early English courts of equity allowed the Chancellor to award attorney's fees to the prevailing party; the Chancellor, however, rarely granted fee awards unless the losing party acted in an abusive manner." John F. Vargo, *The American Rule on Attorney Fee Allocation: The Injured Person's Access to Justice*, 42 Am. U. L. Rev. 1567, 1570 (1993). In contrast, "[a]t common law, fee awards were based solely on statutes." *Id.*; *see also* Arthur L. Goodhart, *Costs*, 38 Yale L.J. 849, 852-54 (1929) (tracing the separate development of

3

the recovery of costs – which in English practice included attorney's fees – at common law and in courts of equity).

In *Sprague* v. *Ticonic Nat'l Bank*, 307 U.S. 161, 166 (1939), the United States Supreme Court observed that "[p]lainly the foundation for the historic practice of granting reimbursement for the costs of litigation other than the conventional taxable costs is part of the original authority of the chancellor to do equity in a particular situation." Even so, the Court cautioned, "such allowances [by equity courts] are appropriate only in *exceptional cases and for dominating reasons of justice.*" *Id.* at 167 (emphasis added).

One manifestation of this power of a chancellor to award attorney's fees is the "common fund" doctrine. *Norris v. Barbour*, 188 Va. 723, 741-43 (1949) ("[e]xcept in rare instances, the power of a court to require one party to contribute to the fees of counsel of another party must be confined to cases where the plaintiff, suing in behalf of himself and others of the same class, discovers or creates a fund which ensures to the common benefit of all"); *see also Internal Improvement Fund Trs. v. Greenough*, 105 U.S. 527, 532-34 (1881). Our decision in *Prospect Development Co.* is another outgrowth from these ancient equitable roots. In that case, we recognized that "in a fraud suit, a chancellor, in the exercise of his discretion, may award attorney's fees to a defrauded party." *Id.* at 92. We explained that "[w]hen deciding whether to award attorney's fees, the chancellor must consider the circumstances surrounding the fraudulent acts and the nature of the relief granted to the defrauded party." *Id.*

St. John posits that an award of attorney's fees is permissible under *Prospect Development Co.* only if the fraud is particularly egregious, and he maintains that the facts here do not rise to that level. We disagree with his premise. An award of fees under *Prospect Development Co.* does not depend on a showing of especially egregious fraud. Instead, fees are

4

proper if the trial court, exercising its discretion in a fraud case, awards equitable relief, and further determines that the circumstances surrounding the fraudulent acts and the nature of the relief granted compel an award of attorney's fees. Our review of this record reveals no abuse of discretion.

St. John also challenges the amount of the fees, contending that fees should not have been awarded for the counts of the complaint that were dismissed; objecting to any fees in connection with allegations against St. John's girlfriend, which the circuit court did not accept; and asserting that the court should have set aside certain specific billing entries. Elsea's attorney initially sought $110,203.80 in fees. He later filed a supplemental fee affidavit seeking an additional $8,077.50. The initial fee submission included fees of $10,000 that counsel for Elsea anticipated would be necessary to execute on the judgment. The circuit court questioned and ultimately rejected the advance fees counsel believed would be required for collection. The court awarded fees totaling $108,211. The circuit court explained on the record its review of the factors pertaining to the reasonableness of the attorney's fees being claimed, as described in *Chawla v. BurgerBusters, Inc.*, 255 Va. 616, 623 (1998), and *Lambert v. Sea Oats Condo. Ass'n, Inc.*, 293 Va. 245, 254 (2017).

The circuit court evidently accepted the plaintiff's argument that work on the dismissed counts and the allegations against St. John's girlfriend were interrelated with the counts that were successful. In addition, the court heard counsel's explanation for some of the billing entries that St. John asserted were not related to this case. For example, one entry St. John identified as problematic states "Fax client's letter to Jeffrey Patton, Esquire requesting a copy of his file." As counsel for Elsea pointed out, Patton was a witness at trial. In another example, when St. John objected to an entry that counsel for Elsea reviewed emails from Barbara Gall, counsel for

5

Elsea responded that St. John had identified Gall as a witness. Although counsel for Elsea did not address each disputed entry, he stated that the entries speak for themselves and that all of them related to this case. The circuit court was entitled to credit this assertion, particularly in the absence of a countervailing explanation or evidence.

The record reveals a thorough and thoughtful consideration of the issue of attorney's fees by the circuit court. We can discern no basis upon which to reverse the court in its award of attorney's fees.

II. THE RECORD DOES NOT SUPPORT REVERSAL ON THE BASIS THAT AN INDISPENSABLE PARTY, A TRUST, WAS NOT BEFORE THE COURT.

"[A]ll persons interested in the subject matter of a suit and to be affected by its results are necessary parties." *Marble Techs., Inc. v. Mallon*, 290 Va. 27, 32 (2015) (quoting *Michael E. Siska Revocable Tr. v. Milestone Dev., LLC*, 282 Va. 169, 173 (2011)) (setting forth the steps required for a circuit court to exercise its discretion to permit the case to continue with the existing parties); *see* Rule 3:12. St. John contends that the circuit court erred in awarding relief when a trust, the Ernest S. Elsea, II Trust UA, was not made a party to the litigation. St. John argues that at least some of the firearms that were the subject of the litigation were owned by the trust, the trust was not made a party to the litigation, and, therefore, the court could not award rescission of the firearms transfer to an entity that was not a party and order other relief. The Thompsons respond that the record does not support the assertion that any of the firearms were owned by a trust. We agree with the Thompsons.

The circuit court found that Elsea owned the firearms individually. Nothing in the record contradicts this finding. Elsea stated that the firearms were his. The record indicates that St. John, upon learning that Elsea owned a trust, prepared an additional document transferring any firearms owned by the trust to St. John. This maneuver obviated any title issues in the event the

6

trust owned firearms, but it does not establish that this trust, in fact, owned any firearms. In short, the record does not support the conclusion that this trust included the firearms at issue. Therefore, the trial court committed no error in granting relief without this trust having been made a party to the suit.

## CONCLUSION

We will affirm the decision of the circuit court. The Thompsons request a remand for additional attorney's fees generated by this appeal. We remand the case for a determination, in the discretion of the circuit court, of whether additional attorney's fees should be awarded.

*Affirmed and remanded.*