# CIRCUIT COURT OF THE CITY OF NORFOLK

Stephanie Burton

    v.

Cyrus Dolph,
Old Point Trust
and Financial Services,
Old Point Trust
and Financial Services,
Executor of the Estate of
Lester Hudgins, Jr.,
Hudgins Contracting Corp.,
Marsha Hudgins,
and Branch Hudgins

Case No. (Civil) CL13-6812

June 27, 2014

By Judge Karen J. Burrell

Plaintiff Stephanie Burton filed suit against several defendants, asserting a series of claims centered around the alleged mismanagement of two irrevocable trusts of which she was a beneficiary. In response, each Defendant demurred to the Complaint, averring a number of deficiencies in the Plaintiff's claims. The case comes before the Court on these demurrers.

## I. Background

On May 17, 2002, the Plaintiff's father, Lester Hudgins, created three irrevocable trusts, the first of which was never funded. Complaint ¶ 11. The second trust was funded by a Lincoln Financial term life insurance policy with a face value of $500,000. Complaint ¶ 12. The third trust was also funded by a Lincoln Financial term life insurance policy with a face value

of $650,000. Complaint ¶ 13. These trusts are collectively referred to as the Irrevocable Trusts. The trust consisting of the $500,000 life insurance policy is referred to as Trust # 2, and the trust consisting of the $650,000 life insurance policy is referred to as Trust # 3. Ann Archer was named the original trustee of the Irrevocable Trusts, with Defendant Old Point Trust named as the successor trustee. Complaint ¶ 16. The Irrevocable Trusts each had multiple named beneficiaries. Lester Hudgins named Marsha Hudgins, his wife, Burton, and Branch Hudgins beneficiaries of Trust # 2. Complaint ¶ 14. Ms. Burton is Lester Hudgins' daughter by his first marriage. Branch Hudgins is Lester Hudgins' son by Marsha Hudgins, rendering him and Burton step-siblings. He named Burton and Branch Hudgins beneficiaries of Trust # 3. Complaint ¶ 15.

Original trustee Ann Archer passed away on November 28, 2009. Complaint ¶ 17. The Complaint alleges that Old Point Trust accepted trusteeship of the Irrevocable Trusts no later than December 21, 2009. Complaint ¶ 18. In support of this allegation, Burton relies upon two Notices of Crummey Withdrawal Rights, which are attached to the Complaint as exhibits 3 and 4. Specifically, Burton claims that Defendant Cyrus Dolph, in his capacity as a director of Old Point Trust, drafted these notices and sent them to the beneficiaries of the Irrevocable Trusts on behalf of Old Point Trust. Complaint ¶ 19.

In 2010, the Lincoln Financial life insurance policies lapsed due to non-payment of premiums. Complaint ¶ 21. Burton contends that, when these policies lapsed, Old Point Trust was the trustee of, and Dolph was the attorney for, the Irrevocable Trusts. Complaint ¶¶ 22, 23. In support of her claims, Burton further asserts the following in her Complaint:

As trustee, Old Point Trust was empowered to borrow against the face value of the life insurance policies to pay the policy premiums, but failed to do so. Complaint ¶ 25;

Old Point Trust, Dolph, and Lester Hudgins failed to provide notice to Burton, as a beneficiary of the Irrevocable Trusts, that the life insurance policies were on the brink of lapsing and that no further payments would be made. As a result, she was unable to take action to protect her interest as a beneficiary. Complaint ¶¶ 27, 29;

The Defendants took no action under either the terms of the trust or applicable law to protect Burton's interests as beneficiary of the Irrevocable Trusts. Complaint ¶ 28;

In 2010, Defendant Hudgins Contracting Corporation, a company owned and controlled by Lester Hudgins, purchased a $2 million life insurance policy from The Hartford and a $1 million life insurance policy from ING, both on Lester Hudgins' life. (These two policies are collectively referred to as the Replacement Policies.) Complaint ¶ 30;

The applications for the Replacement Policies indicated that these policies were intended to replace the Lincoln Financial policies that comprised the

Irrevocable Trusts. In this regard, Hudgins Contracting exercised dominion and control over the Lincoln Financial policies and represented that the Replacement Policies would supplant the Lincoln Financial policies in the Irrevocable Trusts. Complaint ¶¶ 32, 34.

After purchasing the Replacement Policies, Hudgins Contracting transferred ownership of the policies to Lester Hudgins. He, in turn, named a separate revocable trust as the sole beneficiary of the Replacement Policies. The Complaint alleges that the revocable trust was initially formed on November 20, 1996, and has been amended on at least ten different occasions. It further asserts that four of these amendments occurred during the last sixteen days of Lester Hudgins' life. Burton contends that the amendments to the revocable trust affected significant changes concerning the property to be left to its beneficiaries. Complaint ¶¶ 36-38. The Complaint, however, makes no mention of who the original beneficiaries of the revocable trust were.

Neither Old Point Trust nor Dolph adequately disclosed the existence of certain claims for breach of trust. Complaint ¶ 40.

Based on these factual allegations, Burton asserts seven counts in her Complaint:

I. A direct action against Old Point Trust, alleging that it breached its duties as a trustee;

II. A direct action against Dolph, alleging that he breached his duties as a *de facto* trustee;

III. A direct action against Old Point Trust, alleging that a breach of trust resulted when it failed to bring (i) an action for malpractice against Dolph and (ii) an action for conversion against Lester Hudgins' estate and Hudgins Contracting;

IV. A derivative action on behalf of Old Point Trust against Dolph, alleging malpractice;

V. A direct action against Dolph, alleging malpractice;

VI. A derivative action on behalf of Old Point Trust against Hudgins Contracting and Lester Hudgins' Estate, alleging conversion of the assets of the Irrevocable Trusts; and

VII. A derivative action on behalf of Old Point Trust against Dolph, Hudgins Contracting, and Lester Hudgins' Estate, alleging a conspiracy to convert the assets of the irrevocable trusts.

On each of these counts, Burton requests damages totaling $1.15 million, and also seeks costs and expenses, including attorneys' fees, incurred in maintaining the lawsuit. Each defendant filed demurrers in response to the Complaint:

I. Marsha and Branch Hudgins filed a demurrer jointly, arguing that the Complaint contains no allegations against them, nor does it request any relief from them;

II. Hudgins Contracting filed demurrers to Counts VI and VII of the Complaint, arguing that Burton lacks the requisite standing to maintain either of these claims because Virginia law does not recognize derivative actions by a trust's beneficiary. It also contends that the Complaint fails to state a cognizable claim for conversion (Count VI) and conspiracy (Count VII);

III. Old Point Trust filed demurrers to each of Burton's claims against it, specifically alleging: (i) that there are no allegations that Old Point Trust did anything to incur liability; (ii) that there is no request for judgment or remedy from Old Point Trust in any amount or for any reason; (iii) that no agency relationship ever existed between Old Point Trust and Dolph; (iv) that the Complaint fails to establish that Old Point Trust ever accepted trusteeship of the Irrevocable Trusts; and (v) that Old Point Trust had no duty to pay premiums on the Lincoln Financial life insurance policies that comprised the Irrevocable Trusts; and

IV. Dolph filed demurrers to Counts II, IV, V, and VII. With respect to Count II, he argues that there is no such thing as a "*de facto*" trustee under Virginia law. Dolph further contends that Counts IV and VII should be dismissed because Virginia law does not recognize derivative actions maintained by the beneficiary of a trust. Regarding Counts IV and V, Dolph claims that he cannot be liable for malpractice because he did not breach any duty towards Burton as no attorney-client relationship ever existed between the two parties. Finally, he argues that the Complaint fails to set forth facts sufficient to support an action for conspiracy (Count VII).

## II. *Analysis*

### A. *Legal Standard*

"A demurrer tests the legal sufficiency of a [complaint] and admits the truth of all material facts that are properly pleaded." *Harris v. Kreutzer*, 271 Va. 188, 195, 624 S.E.2d 24, 28 (2006). This includes "facts which are impliedly alleged and facts which may be fairly and justly inferred from alleged facts." *Delk v. Columbia/HCA Healthcare Corp.*, 259 Va. 125, 129, 523 S.E.2d 826, 829 (2000) (quoting *Cox Cable Hampton Rds., Inc. v. Norfolk*, 242 Va. 394, 397, 410 S.E.2d 652, 653 (1991)). A demurrer does not, however, "admit the correctness of the pleader's conclusions of law." *Fox v. Custis*, 236 Va. 69, 71, 372 S.E.2d 373, 374 (1988).

In ruling on a demurrer, the Court therefore may not evaluate and decide the merits of a claim; rather, it is limited to determining whether the facts as alleged in the complaint, if taken in the light most favorable to the plaintiff, state a cause of action. *See Fun v. Virginia Military Inst.*, 245 Va. 249, 252 427 S.E.2d 181, 183 (1993). "To survive a challenge by demurrer, a pleading must be made with sufficient definiteness to enable the court to find the existence of a legal basis for its judgment. In other words, despite the liberality of presentation which the court will indulge, the motion *must*

state a cause of action." *Kitchen v. City of Newport News*, 275 Va. 378, 385, 657 S.E.2d 132, 136 (2008) (quoting *Hubbard v. Dresser, Inc.*, 271 Va. 117, 122-23, 624 S.E.2d 1, 4 (2006)) (emphasis added). In view of this legal standard, the Court turns to the Defendants' specific contentions.

B. *Marsha and Branch Hudgins' Demurrers*

As an initial matter, the Court must consider whether Marsha and Branch Hudgins must be made parties to the lawsuit. These Defendants take issue with Burton's justification for joining them in the litigation, "to place them before the jurisdiction of [the] Court and to give them notice of these claims" so that they may appear to protect their interests as beneficiaries of the Irrevocable Trusts. Complaint ¶ 10. Arguing that they are not necessary parties, the Defendants claim to have neither an immediate nor expected interest in the Irrevocable Trusts because the trusts are no longer funded. They, therefore, contend that the Court can accord Burton complete relief without their presence in the proceedings and claim that the mere notice the Complaint provides is insufficient to render them necessary parties. Burton conversely argues that Marsha and Branch Hudgins are necessary parties to the lawsuit simply by virtue of their status as beneficiaries of the Irrevocable Trusts. She maintains that the only way the Defendants can steer clear of this litigation is by disclaiming their interest in the Irrevocable Trusts under Virginia Code § 64.2-633.

This particular point is without merit. Virginia Code § 64.2-633 is not part of the Virginia Uniform Trust Code, but is rather a provision of the Virginia Real Property Transfer on Death Act. The Trust statute contains so such disclaimer provision.

Both the Plaintiff and the Defendants rely upon common authority in support of their respective positions. Each cites to Supreme Court precedent explaining that necessary parties

> include all persons, natural or artificial, however numerous, materially interested either legally or beneficially in the subject matter or event of the suit and who must be made parties to it, and without whose presence in court no proper decree can be rendered in the cause.

*Siska Trust v. Milestone Dev.*, 282 Va. 169, 174, 715 S.E.2d 21, 24 (2011) (quoting *The Buchanan Co. v. Smyth's Heirs*, 115 Va. 704, 707, 80 S.E. 794, 795 (1914)). Indeed, *Siska Trust* represents the Court's most recent discussion of the necessary party doctrine. There, considering whether a limited liability company was a necessary party to a derivative suit initiated by a member of the company, the Court reaffirmed its stance that "all persons interested in the subject matter of a suit and to be affected by its results are necessary parties." *Siska Trust*, 282 Va. at 173, 715 S.E.2d at

23 (citing *Bonsal v. Camp*, 111 Va. 595, 598, 69 S.E. 978, 979 (1911)). Of course, these basic principles dictate that determining whether a party is "necessary" to a lawsuit varies greatly from case to case.

In the context of trust litigation, Virginia law is largely silent on whether, in cases where a trust has multiple named beneficiaries, a co-beneficiary is a necessary party in a suit brought by a fellow beneficiary against the trustee. While it is well settled that a trustee may represent the interests of multiple beneficiaries in a suit where the parties' interests are aligned, it is less clear whether a co-beneficiary must be party to the lawsuit when the interests of the trustee and the beneficiaries are at odds.

The most instructive case on this issue is *Richardson v. Davis*, 62 Va. (21 Gratt.) 706 (1872). In *Richardson*, the Supreme Court considered whether beneficiaries having a contingent interest in the proceeds of a life insurance policy were necessary parties in a suit resolving distribution of those proceeds. William J. Smith, the insured decedent in that case, died leaving behind children from two marriages. *Id.*, 62 Va. at 707. Smith's second wife brought suit against the trustee on behalf of her son, contending that the life insurance policy named her son as the sole beneficiary of the policy under the trust. *Id.* The trustee argued that the decedent's children from his first marriage were also necessary parties because, according to the deed of trust, they had a remainder interest in the life insurance policy that was contingent on the death of the second wife's son. *Id.* Reversing the decision of the lower court, the Supreme Court ruled in favor of the trustee, explaining that the decedent's children from his first marriage were necessary to the lawsuit to prevent future litigation — presumably another lawsuit against the trustee by the absent parties to enforce their rights — and to render a decree according complete relief. *Id.*

The decision in *Richardson* is consistent with the principles underlying the necessary party doctrine. Moreover, it aligns with the view supported by scholars in this area of the law:

> If a suit is brought against a trustee by one or more of several beneficiaries, it is no doubt important to protect the interests of the other beneficiaries; it is also important that the decision should be binding on the other beneficiaries in order to protect the trustee from further suits by them. Therefore, these other beneficiaries should ordinarily be joined as parties if their interests will be affected by the outcome of the litigation.

William F. Fratcher, *Scott on Trusts*, § 214 (4th ed. 1988); *see also* George C. Bogert & George T. Bogert, *The Law of Trusts and Trustees*, § 593 (2d ed. 1980) ("The general rule is, that in suits respecting trust property, brought either by *or against the trustees*, the [beneficiaries] of the trust as well as the trustees are necessary parties.") (emphasis added).

Applying these principles, the Court overrules the demurrer. The trust agreements at issue make clear that Marsha and Branch Hudgins are in fact beneficiaries of the Irrevocable Trusts, *see* Complaint Ex's 1, 2, and the Defendants do not·contest this point. Although they disclaim any interest in the Irrevocable Trusts, if Burton ultimately prevails at trial, Marsha and Branch Hudgins, as co-beneficiaries, would be able to file a congruent lawsuit against the liable parties. And while there are no guarantees that the Defendants would file such a suit, simply allowing them to do so would be at odds with one of the underlying principles of the necessary party doctrine, the decision in *Richardson*, and the justification of scholars — to prevent future litigation against the trustee, thereby avoiding duplicative or inconsistent liability.

Concerns over judicial efficiency also counsel that Marsha and Branch Hudgins be included in this litigation. Indeed, where the Court has the opportunity to join all interested parties to resolve the issues presented in one lawsuit, it must do so. *See Buchanan Co.*, 115 Va. at 708, 80 S.E.2d at 795 (explaining that one narrow exception to the necessary party doctrine is implicated when it is "practically impossible to make all parties in interest parties to the bill"). The Court is not presented with a situation that would render it difficult, let alone practically impossible, to join these Defendants in the lawsuit. Because including them as parties will allow the Court to accord complete relief and prevent future litigation, the Defendants' demurrer is overruled.

## C. *Old Point Trust's Demurrer to Count I of the Complaint*

Burton names Old Point Trust as a defendant in Count I, alleging that it breached its duties as trustee of the Irrevocable Trusts. Count I asserts three separate breaches of trustee duties: (i) the duty to administer the Irrevocable Trusts solely in the interests of the beneficiaries; (ii) the duty to take reasonable steps to take control of and protect trust property; and (iii) the duty to inform the beneficiaries of any information that may materially affect the beneficiaries' interests in the trust property. Complaint ¶¶ 45, 46, 51. On top of contesting the merits of these claims, Old Point Trust argues as a threshold matter that it never actually accepted trusteeship of the Irrevocable Trusts. The allegations in the Complaint, however, support Burton's contention that Old Point Trust in fact accepted trusteeship.

### 1. *The Complaint Supports Ms. Burton's Contention that Old Point Trust Accepted Trusteeship of the Irrevocable Trusts*

Virginia Code § 64.2-754 governs the acceptance of trusteeship. It provides that a prospective trustee may accept trusteeship either by (i) substantially complying with a method of acceptance provided in the terms of the trust; or (ii), if the terms of the trust do not provide a method or

that method is not deemed exclusive, "by accepting delivery of the trust property, exercising powers or performing duties as trustee, or otherwise indicating acceptance of the trusteeship." Va. Code § 64.2-754(A). Part (B) of the statute explains that a designated trustee who has yet to accept trusteeship may reject trusteeship; it further states that, if a reasonable time elapses during which a designated trustee has not yet accepted trusteeship, he is deemed to have rejected trusteeship. Va. Code § 64.2-754(B).

In support of her position, Burton points to paragraph 18 of the Complaint, which alleges that "no later than December 21, 2009, Old Point Trust accepted trusteeship of the Irrevocable Trusts as evidenced in part by two 'Notices of Crummey Withdrawal Right'." Complaint ¶ 18. Old Point Trust conversely argues that paragraph 18 is a legal conclusion unsupported by additional facts in the Complaint. Along those lines, it also contends that it did not engage in conduct that would implicate Virginia Code § 64.2-754, nor did it even have notice that the previous trustee, Ann Archer, had passed away. That fact alone, Old Point Trust asserts, is enough to dispel any notion that it had accepted trusteeship. But, because the Court must accept the Complaint in the light most favorable to the Plaintiff at this stage, Old Point Trust's arguments fall short.

Paragraph 18 of the Complaint clearly alleges that Old Point Trust had accepted trusteeship of the Irrevocable Trusts. Moreover, it cites to the Crummey Notices as evidence that Old Point Trust had, by the time the notices were dispatched, already assumed trusteeship. In addition to references to Old Point Trust as the successor trustee, both Crummey Notices (one for each of the Irrevocable Trusts) allude to Old Point Trust as the *actual* trustee of the Irrevocable Trusts. Complaint Ex's 3, 4 ("These rights can be exercised by you to require Old Point, *as Trustee*, to distribute to you a share of each gift to the Trust. . . .") (emphasis added). The Crummey Notices also reference Ann Archer's death, which thwarts Old Point Trust's assertion that it was unaware of her passing. *Id.*

Moreover, although the Irrevocable Trusts do not contain a specific acceptance provision, the allegations contained in paragraph 18 of the Complaint can reasonably be read to satisfy the requirements of Virginia Code § 64.2-754(A)(2) (stating that acceptance of a trusteeship can be evidenced by "exercising powers or performing duties as trustee, or otherwise indicating acceptance of the trusteeship."). Certainly, notifying a beneficiary of her right to withdraw money from a trust falls within this statutory language. This reading is also consistent with the Official Comment to the analog provision in the Uniform Trust Code. *See* Comment to Uniform Trust Code § 701 ("this section validates any other method demonstrating the necessary intent" to accept trusteeship.). In sum, the Complaint supports Burton's assertion that Old Point Trust accepted trusteeship of the Irrevocable Trusts.

## 2. *The Complaint Supports the Cause of Action Stated in Count I*

Count I of the Complaint alleges three separate duties that Old Point Trust breached as trustee of the Irrevocable Trusts: (i) the duty to administer the Irrevocable Trusts solely in the interests of the beneficiaries under Virginia Code § 64.2-764; (ii) the duty to take reasonable steps to take control of and protect trust property under Virginia Code § 64.2-771; and (iii) the duty to inform the beneficiaries of any information that may materially affect the beneficiaries' interests in the trust property under Virginia Code § 64.2-775. Despite Old Point Trust's contentions to the contrary, the factual assertions in the Complaint adequately support these claims.

Virginia Code § 64.2-764 requires that a trustee administer the trust "solely in the interests of the beneficiaries." The allegations in the Complaint support Burton's cause of action under this provision. Paragraph 22 asserts that when the Lincoln Financial policies, which were to benefit Burton, among others, lapsed, Old Point Trust was the trustee of the Irrevocable Trusts; paragraph 24 of the Complaint alleges that Dolph was involved in the management of the Irrevocable Trusts and thus received copies of premium and lapse notices for the Lincoln Financial policies; and paragraph 25 explains that Old Point Trust had the ability to borrow money against the face value of the Lincoln Financial policies in order to pay the premiums, but failed to do so. Burton contends that, as a result of this series of actions and inactions, Old Point Trust breached its duty to administer the Irrevocable Trusts in the beneficiaries' favor. These allegations more than support Burton's claim. By purportedly taking action to deny Burton of the proceeds of the Lincoln Financial policies, Old Point Trust's actions could certainly be construed to be contrary to the interests of the beneficiaries. This claim, therefore, stands.

Burton's next claim within Count I implicates Virginia Code § 64.2-771, which provides that a trustee "shall take reasonable steps to take control of and protect the trust property." The allegations outlined above from paragraphs 22, 24, and 25 are sufficient to support a cause of action under this provision as well. The parties uniformly agree that the only sources funding the Irrevocable Trusts were the respective Lincoln Financial policies. It follows that the sole piece of property that Old Point Trust had a duty to protect were these policies. The allegations in the Complaint satisfactorily state a claim that Old Point Trust failed to protect the trust property by allowing the policies to lapse. As a result, this claim also stands.

Burton's final claim in Count I originates under Virginia Code § 64.2-775, which provides that the trustee shall keep the "qualified beneficiaries of the trust reasonably informed about the administration of the trust and of the material facts necessary for them to protect their interests." Undoubtedly, knowledge of the lapse of the sole life insurance policies comprising the Irrevocable Trusts constitutes "material facts necessary for [Burton] to protect [her] interests." *Id.* Paragraph 27 of the Complaint plainly asserts

that Old Point Trust failed to provide Burton with any notice regarding the impending lapse of the Lincoln Financial policies. As a result, Burton alleges in paragraph 29 that she was unable to pay the policy premiums herself to retain her interest in the resultant proceeds. To be sure, these allegations sufficiently support a cause of action under this statutory provision. This claim therefore stands, and the demurrer to Count I is overruled.

## D. *Dolph's Demurrer to Count II of the Complaint*

Count II of the Complaint alleges that Dolph is liable for breaching his duties as a *de facto* trustee. Dolph argues that Count II should be dismissed because Virginia law does not recognize the status of *de facto* trustee. In support of his position, Dolph asserts that no Virginia statute or case law has recognized the status of *de facto* trustee under a *written* trust agreement, and that to do so would be inconsistent with the entirety of the Uniform Trust Code, specifically Virginia Code § 64.2-754, which governs the acceptance of trusteeship. Burton maintains that the Supreme Court has, on at least four occasions, acknowledged the status of *de facto* trustee, and that Dolph's involvement in this particular case qualifies as such under the applicable standard. Although a relatively under-developed concept in Virginia — and not discussed in the Comments to the Uniform Trust Code — Burton is correct that Virginia law recognizes *de facto* trustees.

The Supreme Court's most recent discussion of the *de facto* trustee came in *First National Bank v. Johnson*, 183 Va. 227, 31 S.E.2d 581 (1944). In *Johnson*, a merchant's landlord re-entered the leased premises after the merchant had absconded. *See id.*, 227 Va. at 231, 31 S.E.2d at 582. In the merchant's absence, the landlord continued to conduct the merchant's business and, shortly thereafter, took full possession of all of his merchandise and personal property. *See id.* Upon doing so, the landlord sold a portion of the lessee's property and used some of the property to satisfy debts owed to creditors. *Id.*, 227 Va. at 237, 31 S.E.2d at 585. Noting that the landlord had unlawfully assumed management of the merchant's property and that it had dissipated the value of the merchant's assets, the Court held the landlord to be a trustee *de son tort* — in other words, a *de facto* trustee — and held it liable as if it were the trustee of the merchant's property. *Id.* "A 'trustee *de son tort*' is one who of his own authority enters into the possession, or assumes the management, of property which belongs beneficially to another; a person subject to the same rules and remedies as other constructive trustees." 19 M.J., *Trusts and Trustees*, § 2 (2013). *See also Brown v. Lambert*, 74 Va. (33 Gratt.) 256 (1880). The Court reads *Johnson* as the Supreme Court's approval of a cause of action brought against a *de facto* trustee.

The next question is whether Burton has pleaded facts sufficient to cast Dolph in that light. The Court finds that she has. The allegations in the Complaint concerning Dolph are nearly identical to those concerning the

actual trustee, Old Point Trust. In particular, paragraphs 23, 24, 27, and 28 of the Complaint all describe actions or inactions that Dolph engaged in that state a claim for breach of: (i) the duty to administer the Irrevocable Trusts solely in the interests of the beneficiaries under Virginia Code § 64.2-764; (ii) the duty to take reasonable steps to take control of and protect trust property under Virginia Code § 64.2-771; and (iii) the duty to inform the beneficiaries of any information that may materially affect the beneficiaries' interests in the trust property under Virginia Code § 64.2-775. These are precisely the claims that Burton asserts against Old Point Trust. Seen in that light and accepting the allegations in the Complaint in the light most favorable to Burton, these contentions adequately state a cause of action against Dolph as a *de facto* trustee. That the trust agreement in this case was written has no bearing on the Court's conclusion. Consequently, the demurrer to Count II is overruled.

E. *Old Point Trust's Demurrer to Count III of the Complaint*

Burton's next claim against Old Point Trust, contained in Count III, alleges that Old Point Trust breached its duty as trustee by failing to file a malpractice action against Dolph and by failing to file a conversion action against Hudgins Contracting and Lester Hudgins' Estate. She contends that Old Point Trust was aware of the occurrence of the malpractice and conversion, but failed to act upon this knowledge, thereby violating a duty imposed by Virginia Code § 64.2-773: "A trustee shall take reasonable steps to enforce claims of the trust and to defend claims against the trust." In its defense, Old Point Trust raises Article 9, section F(13), of the Irrevocable Trust agreements, which provides:

> The Trustee may decline to enter into or maintain any litigation, endorse any policy payments, or take any other action representing any Trust insurance policies, until the Trustee shall have been indemnified against all expenses and liabilities involved in such action.

Old Point Trust contends that this language supersedes its duty under the statute, and, as a result, it cannot be held liable for failing to enforce potential claims of the Irrevocable Trusts.

This particular issue is controlled by Virginia Code § 64.2-703. That provision dictates that, in certain enumerated circumstances, the terms of the trust agreement itself will prevail over statutory provisions: "Except as otherwise provided in the terms of the trust, this chapter governs the duties and powers of a trustee, relations among trustees, and the rights and interests of a beneficiary." Va. Code § 64.2-703(A). Although § 703 lays out a number of exceptions to its general rule, enforcement of trust claims is not among them. It follows that, if the terms of a trust agreement modify

the statutory requirement to enforce claims of the trust imposed by § 773, the terms of the trust agreement will prevail. Accordingly, this claim turns on the interpretation of the language of Article 9, section F(13).

Burton argues that the language of that section of the Irrevocable Trust agreements should be read to mean that the trustee may merely delay filing appropriate litigation until it has been indemnified. She maintains that it should not be interpreted to give the trustee an option to institute litigation even when it is apparent that doing so would be appropriate. Moreover, Burton asserts that the intent of Article 9, section F(13), is to prevent the trustee from accumulating excessive litigation costs, thereby limiting the trustee's risk of personal liability.

While this may be true, the language of the trust provision at issue makes clear that the trustee retains the option of instituting litigation *until* it is indemnified against all costs and liabilities. The Complaint fails to set forth an allegation that Old Point Trust was ever indemnified in such a manner, and the Court cannot draw such an inference from Burton's existing assertions. Virginia Code § 64.2-703 directs that, in this instance, the terms of the trust agreement outweigh any related statutory provisions. Therefore, although Burton may fairly argue that Old Point Trust's failure to institute malpractice and conversion actions was not reasonable, Article 9, section F(13), of the trust agreements precludes reaching that determination; the trust provision controls. As a result, the Court sustains the demurrer.

### F. *Dolph's Demurrer to Count IV of the Complaint*

In Count IV of the Complaint, Burton asserts a derivative claim on behalf of Old Point Trust (as trustee) against Dolph for malpractice. This claim is grounded in Dolph's purported failure to counsel Old Point Trust regarding the lapse of the Lincoln Financial policies. Dolph demurs, arguing as a threshold matter that this claim is improper because Virginia law does not recognize derivative claims brought by a beneficiary on behalf of a trustee. He further maintains that, because Old Point Trust owed no duty to prevent the lapse of the policies, an action for malpractice is precluded. The Court overrules this demurrer.

#### 1. *The Plaintiff's Derivative Claims are Properly Before the Court*

The threshold issue here is whether Burton has standing to maintain this malpractice claim against Dolph on behalf of Old Point Trust. Burton frames it as a derivative claim, lodged as a result of Old Point Trust's failure to take action as trustee of the Irrevocable Trusts. In support of its stance that Burton lacks standing, Dolph relies primarily upon the Supreme Court's decision in *Poage v. Bell*, 35 Va. (8 Leigh) 604 (1837). Burton conversely argues that, in view of enactment of the Virginia Uniform Trust Code in 2005, the publication of the Restatement (Second) of Trusts, and

the distinction drawn in *Poage* between courts of law and equity, she has standing to assert these claims derivatively.

*Poage* involved a suit by a beneficiary against a third-party alleged to have converted trust property. Although the Court held that only the trustee could bring suit against the third party, it qualified its holding, explaining that while the trustee was the proper party to bring the action at law, the beneficiary could maintain the lawsuit in a court of equity. *See Poage*, 35 Va. at 607 ("This shows the propriety of confining the [beneficiary] to a court of equity (when that jurisdiction is proper for him) where all persons interested may be made parties. . . ."). Remarkably, since the *Poage* decision in 1837, only two cases have invoked its rule of law. *See Busman v. Beeren & Barry Investments, L.L.C.*, 69 Va. Cir 375 (Fairfax 2005); *Broyhill v. Bank of America, N.A.*, 2010 U.S. Dist. LEXIS 106766 (E.D. Va. 2010). Dolph cites both of these cases in support of his position, but his reliance on these precedents is misguided.

The issue in *Busman* was not whether a trust's beneficiary could bring suit against a third party for unlawful action concerning the trust, but rather whether the *trustee* could maintain such an action. *See Busman*, 69 Va. Cir. at 377. Likewise, *Broyhill* cannot be read to fully support the Defendant's claim that only a trustee can maintain an action against a third-party. Such a reading is precluded primarily because the beneficiary in that case neither addressed that particular issue in briefing, nor did he refute opposing counsel's contentions during oral argument. *See Broyhill*, 2010 U.S. Dist. LEXIS at *7-8 (explaining with respect to a derivative claim lodged by a trust beneficiary: "Broyhill does not address this argument in his Opposition brief and did not refute it during oral argument.").

Pointing out the deficiencies in these precedents, Burton instead relies on the Restatement (Second) of Trusts § 282, which provides an exception to the general rule that trustees alone are competent to bring suit against third parties: "If the trustee improperly refuses or neglects to bring an action against the third person, the beneficiary can maintain a suit in equity against the trustee and the third person." Restatement (Second) of Trusts § 282(2). Burton readily acknowledges that the Supreme Court has not officially adopted the Restatement and also concedes that it has yet to explicitly recognize a derivative cause of action as described in § 282. Nevertheless, she points to that Court's consistent reliance on the Restatement and the General Assembly's enactment of the Virginia Uniform Trust Code as evidence that such a cause of action exists under Virginia law. Her arguments are compelling.

Burton is correct that the Supreme Court has relied upon the Restatement in resolving trust issues in the past, both before and after enactment of the Uniform Trust Code. *See, e.g., Sturgis v. Stinson*, 241 Va. 531, 535, 404 S.E.2d 56, 58 (1991); *Leonard v. Counts*, 221 Va. 582, 588, 272 S.E.2d 190, 195 (1980); *Broaddus v. Gresham*, 181 Va. 725, 733 (1943);

*Carlson v. Wells*, 281 Va. 173, 183, 705 S.E.2d 101, 105 (2011). Certainly, this consistent reliance upon the Restatement is harmonious with § 704 of Virginia's version of the Uniform Trust Code, which provides that "[t]he common law of trusts and principles of equity" should be used to supplement the provisions of the statute. Va. Code § 64.2-704. Indeed, the Restatement is simply a compilation of common law principles that have developed over the years. *See Harvard Law School Lib.*, http:// guides. library.harvard.edu/ content.php?pid =103327&sid= 1036651&gid=4882 ("The [Restatement's] aim is to distill the 'black letter law' from cases to indicate *trends in common law,* and occasionally to recommend what a rule of law should be. In essence, *they restate existing common law* into a series of principles or rules.") (emphasis added). Nothing in Virginia law dispels the notion that courts should look to the Restatement for guidance in deciding cases — in fact, quite the opposite is true. *See Belcher v. Dandridge,* 61 Va. Cir. 684, 688 (Norfolk 2002) ("[T]he Supreme Court has traditionally viewed the Restatement as persuasive authority.").

Burton's argument on this point is further bolstered by the Official Comments to the Uniform Trust Code. "The Comments provide background information (such as the origin of a rule), make important cross-references, state certain assumptions upon which the statutory language is based, explain the rationale for differentiating between default and mandatory rules, and, more generally, elaborate on the intended meaning of certain statutory provisions." John E. Donaldson & Robert T. Danforth, "The Virginia Uniform Trust Code," 40 *U. Rich. L. Rev.* 325, 332 (2005). Indeed, regular consultation of the Comments is crucial to achieving one of the chief goals of the Uniform Trust Code: to promote uniformity in application of the statute. *See id.* Dependence on the Comments is especially important in view of the complexity of the statute itself, because it could not realistically have been drafted to account for every conceivable situation. *Id.* Undoubtedly, this concern is heightened in Virginia, where we are without the benefit of the Code's legislative history. *Id.* at 332-33.

Although no provision of the Code expressly affords Burton the right to lodge a derivative claim, the Comments contemplate the existence of such a cause of action and, certainly, no provision of the Code precludes it. Specifically, the Comment to Uniform Trust Code § 1004 (codified verbatim at Virginia Code § 64.2-795) acknowledges that, in certain cases, litigation may be instituted by a beneficiary against a third party because the trustee has failed to do so himself. *See* Comment to Uniform Trust Code § 1004 ("On other occasions, the suit by the beneficiary is brought because of the trustee's failure to take action against a third party, such as to recover property properly belonging to the trust."). In support of this proposition, the Comment cites with approval § 282 of the Restatement (Second) of Trusts.

Upon consideration of the competing positions on this issue, the Court finds that Burton has standing to lodge derivative claims as a beneficiary

of the Irrevocable Trusts. The only cognizable argument that the Defendant advances rests upon a Supreme Court case decided in 1837. And while *Poage* has not expressly been overruled, it has hardly been cited as authority since it was decided; furthermore, to the extent it has been relied upon, it has been so by courts whose decisions are not binding upon this one. In the Court's view, although it is persuasive authority, the Restatement more accurately reflects the current state of the law, especially after the enactment of the Virginia Uniform Trust Code.

Moreover, nothing in the Trust statute precludes derivative actions instituted by beneficiaries of a trust. In fact, the Comments to the Code acknowledge the utility in referencing the Restatement and, in particular, recognize the existence of a cause of action brought by a beneficiary under § 282. Further, the Supreme Court has time and again looked to the Restatement for instruction in deciding cases implicating trust issues, and doing so is consistent with Virginia Code § 64.2-704, which calls on common law principles to supplement the statutory provisions of the Code. In view of this landscape, the Court finds that Burton has standing to lodge her derivative claims.

This finding is consistent with the Court's stance on Count III concerning Old Point Trust's option to enforce claims of the Irrevocable Trusts. As a practical matter, allowing a beneficiary to derivatively bring suit against a third party is prudent where the provisions of the trust agreement and statutory scheme conspire to create a situation where the trustee is under no obligation to file suit and the beneficiary lacks standing to do so.

With this understanding in mind, the Court turns to the substance of Dolph's demurrer to Count IV.

### 2. *The Complaint Supports the Cause of Action Stated in Count IV*

In Count IV, Burton alleges that Dolph committed legal malpractice through a series of actions and inactions taken with respect to the Irrevocable Trusts. In response, Dolph's sole argument is that, because Old Point Trust owed no duty to prevent the lapse of the policies, there can be no malpractice action. The Court rejects this contention. The Complaint clearly alleges that Old Point Trust owed a duty to administer the Irrevocable Trusts in the interests of the beneficiaries. *See supra* Part C (ii). Moreover, the question presented here is not whether the Complaint establishes that Old Point Trust breached any duty it may have owed; rather, it is whether the Complaint sufficiently demonstrates that Dolph's representation of Old Point Trust and the Irrevocable Trusts themselves fell below the applicable standard for legal malpractice. "A cause of action for legal malpractice requires the existence of an attorney-client relationship which gives rise to a duty, breach of that duty by the defendant attorney, and that the damages claimed by the plaintiff client must have been proximately caused by the defendant attorney's breach." *Cox v. Geary*, 271 Va. 141, 152, 624 S.E.2d

16, 22 (2006) (quoting *Rutter v. Jones, Bleachman, Woltz & Kelly, P.C.*, 264 Va. 310, 313, 568 S.E.2d 693, 695 (2002)). In this regard, an action for the professional negligence of an attorney is one for breach of contract; but for the absence of the contract, the attorney owes no duty to the client. *See id.*

In this instance, Burton has satisfactorily pleaded a case of malpractice against Dolph with respect to his representation of Old Point Trust and the Irrevocable Trusts. The Complaint clearly alleges that an attorney-client relationship between Dolph and Old Point Trust/Irrevocable Trusts in fact existed. Complaint ¶¶ 23, 73. Along those lines, Burton also alleges that Dolph owed these clients a duty and lays out the nature of the duty. Complaint ¶ 75. And finally, the Complaint contains sufficient allegations that Dolph breached these duties and that, in doing so, he caused damages by impairing the value of the Irrevocable Trusts. Complaint ¶¶ 76, 77, 81. The Court consequently overrules this demurrer.

## G. *Dolph's Demurrer to Count V of the Complaint*

Dolph also demurs to Count V of the Complaint, in which he is the subject of a direct action for malpractice. Burton asserts this claim as a non-client beneficiary under Virginia Code § 55-22, arguing that she was an intended beneficiary of the attorney-client relationship between Dolph and Old Point Trust/Irrevocable Trusts. Dolph contends that the Complaint does not support Burton's claim that she was an intended beneficiary of his legal services. In particular, he maintains that Burton cannot point to the terms of any attorney-client agreement that could serve as the basis for the allegations in Count V. The Court disagrees and overrules the demurrer.

Whether a non-client third party can bring suit against an attorney for malpractice is controlled by the Supreme Court's decision in *Copenhaver v. Rogers*, 238 Va. 361, 384 S.E.2d 593 (1989). In *Copenhaver*, the defendant law firm prepared wills for a client one year prior to her death. *Id.*, 238 Va. at 363, 384 S.E.2d at 593. After the will was admitted to probate, the law firm submitted a petition to uphold trust terms that had been added to the will by a codicil. *Id.*, 238 Va. at 363-64, 384 S.E.2d at 594. The petition, however, mistakenly asked the trial court to void the trust on the ground that it had no trust term. *Id.* As a result, the plaintiffs, grandchildren of the client for whom the law firm had prepared the will, brought suit against the law firm for malpractice, claiming that the firm's actions resulted in a loss of their residuary share of the trust. *Id.* Precisely as Burton does here, the plaintiffs in *Copenhaver* predicated their own standing upon a theory that they were intended third-party beneficiaries. *Id.*

In dismissing the plaintiffs' claims, the Court explained that "[i]n order to proceed on the third-party beneficiary contract theory, the party claiming the benefit must show that the parties to a contract clearly and definitely intended to confer a benefit upon him." *Copenhaver*, 238 Va. at 367, 384 Va. at 596. Therefore, absent a showing that the party against whom liability

is asserted assumed an obligation for the benefit of the third party, a cause of action under Virginia Code § 55-22 is precluded. *Id.* ("Put another way, a person who benefits only incidentally from a contract between others cannot sue thereon."). The Court went to great lengths to point out the difference between being the intended beneficiary of an estate, which the plaintiffs in *Copenhaver* were, and the intended beneficiary of a contract between an attorney and a client, which they were not. *Id.* Indeed, the Court wrote that, only when a plaintiff could demonstrate that the clear intent of the attorney-client contract was to benefit her, could that plaintiff sue upon a theory that she was an intended third-party beneficiary. *Id.*

Of particular importance in *Copenhaver* was the content of the complaint, which referred to the plaintiffs as being beneficiaries of their grandparents' *estate*. (Emphasis added.) In subsequent pleadings, a brief in opposition to demurrer and a motion for reconsideration, the plaintiffs eventually described themselves as beneficiaries of the contracts between their grandparents and the defendant law firm. The Court, of course, rendered its opinion based on the representations in the Complaint, but took notice of the fact that, as the litigation advanced, the plaintiffs became aware of the difference between being the beneficiary of the estate and being the beneficiary of the attorney-client contract. *See Copenhaver*, 238 Va. at 369, 384 Va. at 597, n. 2. Burton has not made the same mistake in her Complaint.

Unlike the *Copenhaver* plaintiffs, Burton properly makes the distinction between being the beneficiary of the trust agreement and the beneficiary of the attorney-client contract between Dolph and Old Point Trust/Irrevocable Trusts. Although the assertions supporting this claim are sparing, they are sufficient to survive demurrer. Particularly, paragraph 84 of the Complaint describes the attorney-client agreement between Dolph and Old Point Trust and asserts that, as part of the agreement, Dolph agreed to "assist the Trustee in the Trustee's maximization of the benefits available to the beneficiaries." Complaint ¶ 84. While this is the only allegation in the 106 paragraph-long Complaint that discusses the attorney-client agreement, it is enough to support Burton's assertion that the agreement "clearly and definitely intended to confer a benefit" upon her as a beneficiary of the Irrevocable Trusts. Complaint ¶ 85. As Burton frames it, this clause can be read to mean that she was a clearly contemplated beneficiary of the attorney-client agreement at issue. On demurrer, the Court is not in a position to speculate about the truth of this allegation, nor can it even consider the likelihood of Burton's being able to substantiate this claim at trial. Because it must accept the factual allegations in the Complaint as true, the Court overrules this demurrer.

At oral argument, counsel for Dolph argued that the Supreme Court's decision in *Johnson v. Hart*, 279 Va. 617, 692 S.E.2d 239 (2010), prohibits Burton's claim in Count V. Upon consideration of *Johnson*, the Court disagrees. The plaintiff in that case did not attempt to argue that she

had standing to lodge her claims as a third-party beneficiary; rather, she maintained that, because a beneficiary under a will is the beneficial owner of the assets of an estate, Virginia Code § 8.01-13 permits such a beneficiary to bring a legal malpractice action in her own name. *Id.*, 279 Va. at 622, 692 S.E.2d at 242. In essence, her argument was nearly identical to that of the plaintiffs in *Copenhaver*. Burton proceeds under the third-party beneficiary theory, which does not implicate *Johnson*, but does so consistent with the rule of law set forth in *Copenhaver*.

H. *Hudgins Contracting's and Lester Hudgins' Estate's Demurrer to Count VI of the Complaint*

In Count VI, Burton asserts a derivative claim of conversion against Hudgins Contracting and Lester Hudgins' Estate on behalf of Old Point Trust. For the reasons discussed in Part F(i), the Court finds that Burton may properly lodge this derivative claim. She contends that, by purchasing the Replacement Policies to supersede the Lincoln Financial Policies, these Defendants acted illegally. The Defendants demur, arguing that, because (i) Burton failed to allege that they ever took possession of the Lincoln Financial policies and (ii) Burton was not entitled to immediate possession of the policies, the elements of conversion were not satisfied.

The Supreme Court has explained:

> Any distinct act of dominion wrongfully exerted over the property of another, and in denial of his rights, or inconsistent therewith, may be treated as a conversion and it is not necessary that the wrongdoer apply the property to his own use. And when such conversion is proved, the plaintiff is entitled to recover, irrespective of good or bad faith, care or negligence, knowledge or ignorance.

*Universal C.I.T. Credit Corp. v. Kaplan*, 198 Va. 67, 76, 92 S.E.2d 359, 365 (1956). Further, "[a]n action for conversion can be maintained only by the person having a property interest in and entitled to the immediate possession of the item alleged to have been wrongfully converted." *Economopoulos v. Kolaitis*, 259 Va. 806, 814, 528 S.E.2d 714, 719 (2000). Although the Defendants assert that "[t]he general rule in the Commonwealth is that an action for conversion applies only to tangible property," *Golden v. Chaplin*, 79 Va. Cir. 155, 156 (Fairfax 2009), that is a misstatement of the law; indeed, the very case they cite in support of that proposition granted a plaintiff's claim for conversion of money. *See also PGI, Inc. v. Rathe Productions, Inc.*, 265 Va. 334, 576 S.E.2d 438 (2003) (reversing a lower court decision and sustaining a plaintiff's claim for conversion of money).

Given this legal backdrop, the Court finds that Burton's claim for conversion withstands demurrer. The Complaint contains allegations that Hudgins Contracting purchased the Replacement Policies, Complaint ¶ 30,

and that the application for those policies made clear that they were intended to replace the Lincoln Financial policies comprising the Irrevocable Trusts. Complaint ¶ 32. Burton further asserts that Hudgins Contracting transferred ownership of the Replacement Policies to Lester Hudgins, who, in turn, named a separate revocable trust as beneficiary of those policies. Complaint ¶ 36. In view of these allegations, the Complaint supports a valid cause of action for conversion. Contrary to the Defendants' contentions, Burton need not allege that the Defendants ever took possession of the Lincoln Financial policies. Instead, all Burton must allege is that they committed "[a]ny distinct act of dominion wrongfully exerted over" the property of the individual asserting the cause of action. *See Universal C.I.T. Credit Corp.*, 198 Va. at 76, 92 S.E.2d at 365. In this instance, Burton correctly points out that, because she is asserting these claims derivatively on behalf of the trustee of the Irrevocable Trusts, the property at issue is the trust property, the Lincoln Financial policies. Undoubtedly, the claims that Hudgins Contracting purchased the Replacement Policies and substituted them for the Lincoln Financial policies without the consent of the trustee are sufficient to state a cause of action for conversion. The demurrer to Count VI is, therefore, overruled.

I. *Hudgins Contracting's, Dolph's, and Lester Hudgins' Estate's Demurrer to Count VII of the Complaint*

In Count VII, Burton alleges a derivative claim of conspiracy against Hudgins Contracting, Lester Hudgins' Estate, and Dolph. For the reasons discussed in Part F(i), the Court finds that Burton may properly lodge this derivative claim. Specifically, she asserts that these Defendants collectively participated in a scheme to convert the assets of the Irrevocable Trusts. In this regard, Count VII essentially asserts a claim of conspiracy to commit the acts alleged in Count VI. In response, the Defendants argue that they never engaged in illegal conduct or in a legal course of conduct using illegal means. They also contend that, because the Complaint casts both Lester Hudgins and Dolph as agents of Hudgins Contracting, a conspiracy could never have materialized under the doctrine of intra-corporate immunity. Finally, the defense maintains that the Estate of Lester Hudgins is not an entity competent to enter into a conspiracy.

"A common law conspiracy consists of two or more persons combined to accomplish, by some concerted action, some criminal or unlawful purpose or some lawful purpose by a criminal or unlawful means." *Commercial Business Sys. v. BellSouth Servs.*, 249 Va. 39, 48, 453 S.E.2d 261, 267 (1995). "However, the intra-corporate immunity doctrine, which has been adopted by the Virginia Supreme Court and the Fourth Circuit, deems multiple defendants a single entity for the purpose of analyzing a civil conspiracy claim if such defendants are employees or agents of the same entity and are acting within the scope of their employment/agency." *Fox*

*v. Deese*, 234 Va. 412, 428, 362 S.E.2d 699, 708 (1987). In other words, a single entity, "[b]y definition . . . cannot conspire with itself." *Id.*

The Court finds that the allegations in the Complaint set forth in support of Burton's conspiracy claim are sufficient to withstand demurrer. Indeed, paragraphs 30 through 36 of the Complaint lay out a scheme in which Hudgins Contracting and Lester Hudgins acted in concert to purchase the Replacement Policies and swap them into the place of the existing Lincoln Financial Policies. *See also supra*, Part H. Additionally, paragraph 76 of the Complaint alleges that Dolph participated in this scheme with the other named Defendants. Read collectively, these assertions adequately state a claim for conspiracy to convert the assets of the Irrevocable Trusts.

With respect to the intra-corporate immunity defense, the Complaint does not specifically allege that the conspiracy occurred within the scope of either Lester Hudgins' or Dolph's employment with Hudgins Contracting, as is required for the Defendants to avail themselves of immunity. Counsel for Burton made this point clear at oral argument. Along those lines, to preclude the claim at this juncture would be premature. The intra-corporate immunity defense will be available to the Defendants at subsequent stages of the litigation and, if further evidence establishes that the conspiracy was executed within either Defendant's scope of employment with Hudgins Contracting, each may ultimately raise the defense through a vehicle other than demurrer. To do so now, however, is improper.

The Defendants' argument that the Estate of Lester Hudgins cannot be party to the conspiracy claim likewise fails. A careful reading of the Complaint reveals that the substance of the allegations in this particular claim all name Lester Hudgins himself as the liable party. *See* Complaint ¶¶ 102, 103. The Complaint references the Estate only to the extent that it is the entity ultimately responsible for compensating the Plaintiff if she is successful at trial. *See* Complaint at 16. Of course, this makes sense if for no other reason than that a conspiracy involving Hudgins could not have happened after he died.

The posture of the claim finds further support in the statutory scheme. Virginia Code § 8.01-25 provides for the survival of a cause of action in the event of the death of any of the litigants:

> Every cause of action whether legal or equitable, which is cognizable in the Commonwealth of Virginia, shall survive either the death of the person against whom the cause of action is or may be asserted or the death of the person in whose favor the cause of action existed or the death of both such persons.

The plain language of the statute makes clear that, so long as a cause of action existed prior to the litigant's death, it will continue to exist afterwards. Nothing in the statute purports to alter the statute of limitations or the substance of any particular claim.

Seen in this light, Count VII simply alleges a tort against Lester Hudgins. The Plaintiff casts Hudgins, not his Estate, as the wrongdoer; the cause of action no doubt arose while Hudgins was still alive, and the Defendants have made no argument that the claim was untimely filed. Under Virginia Code § 8.01-25, Hudgins' death has no bearing on the substance of the Plaintiff's claims. That provision dictates that he is just as liable now as he would be were he still alive. The Estate is named in the Complaint only to account for this potential liability, not as a co-conspirator working to convert the assets of the Irrevocable Trusts. The Court, therefore, overrules the demurrer to Count VII.

### III. *Conclusion*

For the reasons stated, the Court (1) overrules the demurrer to Count I; (2) overrules the demurrer to Count II; (3) sustains the demurrer to Count III; (4) overrules the demurrer to Count IV; (5) overrules the demurrer to Count V; (6) overrules the demurrer to Count VI; (7) overrules the demurrer to Count VII.

February 24, 2015

By Judge David W. Lannetti

Today the Court reiterates its prior ruling that a trust beneficiary can maintain a derivative suit on behalf of a trustee against a third party *de facto* trustee. The Court therefore overrules the demurrer of Old Point Trust and Financial Services, as Executor of the Estate of Lester Hudgins, Jr., as to Count VIII of the Amended Complaint, which is titled "Direct Action by Burton Individually and Derivatively on Behalf of Old Point of Both Irrevocable Trusts Against the Estate of Lester L. Hudgins, Jr."

### *Background*

Plaintiff Stephanie Burton filed suit against several Defendants, asserting claims based on the alleged mismanagement of two irrevocable trusts of which she was a beneficiary. In response, each Defendant demurred to the Complaint. The Court, after briefing and related oral argument, ruled on those demurrers in an Opinion Letter dated June 27, 2014 (the "June 27, 2014, Opinion"). Burton, with leave of the Court, subsequently filed an Amended Complaint, to which Defendants Old Point Trust and Financial Services ("Old Point Trust"), Cyrus Dolph, and Old Point Trust and Financial Services as Executor of the Estate of Lester Hudgins, Jr. ("Hudgins Estate") demurred. Burton responds to Defendants' demurrers in her Memorandum in Opposition to Defendants' Demurrers to Amended Complaint ("Memorandum in Opposition").

The factual background of the case as well as a summary of the claims asserted in the original Complaint are outlined in the June 27, 2014, Opinion.

In her Amended Complaint, Burton amends Counts I and II to also sue derivatively on behalf of Old Point Trust as trustee of both irrevocable trusts and adds Count VIII, which she styles as "Direct Action by Burton Individually and Derivatively on Behalf of Old Point of Both Irrevocable Trusts Against the Estate of Lester L. Hudgins, Jr." (Am. Compl. 1.)

At the February 5, 2015, hearing on the demurrers to the Amended Complaint, Burton, by counsel, conceded that the Court should sustain the demurrers of Old Point Trust, Dolph, and Hudgins Estate regarding the derivative claims filed by Burton on behalf of Old Point Trust as trustee in Counts I, II, and VIII. Sustaining the demurrers to Counts I and II effectively removes the amendments to those claims as asserted in the Amended Complaint. The Court entered an agreed-upon Order sustaining those demurrers and dismissing those portions of the Amended Complaint that sought to recover derivatively on behalf of Old Point Trust as trustee.

The sole issue now before the Court is whether there is merit to the other grounds asserted in the demurrer of Hudgins Estate to the Amended Complaint (the "Hudgins Estate Demurrer"), which this Opinion addresses.

*Positions of the Parties*

A. *Legal Standard*

A demurrer tests the legal sufficiency of the claims stated in the pleading challenged. *Dray v. New Mkt. Poultry Prods., Inc.*, 258 Va. 187, 189, 518 S.E.2d 312, 312 (1999). The only question for the Court to decide is whether the facts pleaded, implied, and fairly and justly inferred are legally sufficient to state a cause of action against Defendant. *Thompson v. Skate Am., Inc.*, 261 Va. 121, 128, 540 S.E.2d 123, 126-27 (2001). On demurrer, the Court must admit the truth of all material facts properly pleaded, facts that are impliedly alleged, and facts that may be fairly and justly inferred from the alleged facts. *Cox Cable Hampton Rds., Inc. v. City of Norfolk*, 242 Va. 394, 397, 410 S.E.2d 652, 653 (1991). A demurrer does not admit the correctness of any conclusions of law. *Ward's Equip., Inc. v. New Holland N. Am., Inc.*, 254 Va. 379, 382, 493 S.E.2d 516, 518 (1997). Even if imperfect, a complaint drafted such that a defendant cannot mistake the true nature of the claim should withstand demurrer. *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24, 431 S.E.2d 277, 279 (1993). The Court will not consider any factual assertions outside the pleadings for purposes of a demurrer. *See* Va. Code Ann. § 8.01-273.

## B. *The Hudgins Estate Demurrer*

Hudgins Estate alleges nine grounds as bases for its demurrer. In short, Hudgins Estate argues that: (i) the express terms of the trusts preclude Lester Hudgins, Jr. ("Lester Hudgins")[3] from acting as a trustee; (ii) Old Point Trust, as an alleged trustee, is not a proper plaintiff; (iii) Lester Hudgins could not have been the trustee because there is no allegation that proper statutory procedures were followed; (iv) the Amended Complaint does not allege that Lester Hudgins sent the Crummey Notices; (v) there is no basis in law to conclude that Lester Hudgins's actions made him a *de facto* trustee; (vi) Virginia law does not recognize a *de facto* trustee; (vii) a *de facto* trustee would not have a duty to personally fund a trust or provide legal notices to third parties; (viii) Lester Hudgins is not liable for harm occasioned by an act of God; and (ix) Lester Hudgins had no duty to pay for the policies as a settlor or advise his beneficiaries of his decision not to make payments or gifts to the trust.

At the February 5, 2015, hearing, counsel for Hudgins Estate orally indicated that Hudgins Estate's demurrer to the Amended Complaint should be viewed as a demurrer to Count VI — in addition to Counts I, II, and VIII — even though no such demurrer is included in the Hudgins Estate pleading. According to Rule 1:4(d) of the Rules of Supreme Court of Virginia: "Every pleading shall state the facts on which the party relies in numbered paragraphs, and it shall be sufficient if it *clearly informs* the opposite party of the true nature of the claim or defense." Va. Sup. Ct. R. 1:4(d) (emphasis added). The Hudgins Estate Demurrer does not "clearly inform" the opposing party of a demurrer to Count VI, nor did the Court have notice of a demurrer to that count. Because Hudgins Estate did not demur to Count VI, the Court does not address such demurrer. Notably, the Amended Complaint did not amend Count VI; the Court addressed the Hudgins Estate Demurrer to Count VI of the original Complaint in the June 27, 2014, Opinion; and counsel for Hudgins Estate admitted at the February 5, 2015, hearing that, factually, nothing about the case had changed since the Court's ruling on the demurrer to Count VI.

Counsel for Hudgins Estate also remarked at the February 5, 2015, hearing that the Court could elect to view the Hudgins Estate Demurrer as a motion to reconsider the Court's prior holdings in the June 27, 2014, Opinion. As no motion to reconsider is properly before the Court, the Court does not elect to do so. When the Court inquired of Hudgins Estate's counsel at the February 5, 2015, hearing whether there were any new or different

---

[3]  As a result of Lester Hudgins, Jr.'s death, Hudgins Estate is synonymous with Lester Hudgins, Jr. *See McAlpin v. Leeds & Northrup, Co.*, 912 F. Supp. 207, 209 (W.D. Va. 1996) (citing *Payne v. Piedmont Aviation, Inc.*, 294 F. Supp. 216 (E.D. Va. 1968)) (affirming that the administratrix of an estate steps into the shoes of the decedent when litigating on his behalf).

facts, circumstances, or law related to the case since the June 27, 2014, Opinion that might justify reconsideration, counsel responded that the only change was the judge assigned to the case. The Court finds that, even had a motion for reconsideration been timely filed, such a change, without more, does not justify reconsidering its prior rulings.

## C. *Burton's Response to the Hudgins Estate Demurrer*

In her Memorandum in Opposition, Burton addresses the Hudgins Estate Demurrer grounds as follows: (i) Burton states that whether the irrevocable life insurance trust expressly excludes Lester Hudgins from acting as a trustee has no bearing on whether Hudgins was a *de facto* trustee under equitable principles; (ii) Burton concedes that she cannot bring a claim derivatively on behalf of Old Point Trust as trustee, but emphasizes that the June 27, 2014, Opinion permits her to bring a claim in her capacity as beneficiary; (iii) Burton asserts that she never claimed the trust would fail for want of a trustee, but rather claimed "that either Old Point, Dolph, or Hudgins in fact performed as a trustee, actual or *de facto*" (Pl. Memo. Opp'n 4); (iv) Burton references the portion of the Amended Complaint alleging that Lester Hudgins sent the Crummey Notices, apparently overlooked by Hudgins Estate; (v) Burton fails to explicitly address Hudgins Estate's assertion that there is no basis in law that would make Lester Hudgins a *de facto* trustee based on his actions, but elsewhere alleges that Lester Hudgins acted as a *de facto* trustee; (vi) Burton references the June 27, 2014, Opinion recognizing a cause of action against a *de facto* trustee; (vii) Burton highlights that Hudgins Estate cites no case law to support its position regarding the duties, or lack thereof, of a *de facto* trustee; (viii) Burton states that she is not complaining about an act of God, but rather about an act of men; and (ix) Burton points out that she never said Lester Hudgins had a duty *as an individual* to pay the policies or advise beneficiaries about the failure to make payments or gifts, but rather that he had these duties as a *de facto* trustee. Burton also emphasizes that she complains alternatively against Old Point Trust as trustee, Dolph as *de facto* trustee, and Lester Hudgins as *de facto* trustee.

Burton underscored the arguments she laid out in her Memorandum in Opposition at the February 5, 2015, hearing.

### Analysis

The Court has considered the Hudgins Estate Demurrer to the Amended Complaint, Burton's Memorandum in Opposition, oral argument at the February 5, 2015, hearing, this Court's prior rulings, and applicable authority.

The remaining grounds of Count VIII constitute a beneficiary derivative claim on behalf of Old Point Trust against a third party, a claim virtually identical to Count II. The Court in the June 27, 2014, Opinion discussed

in detail whether Burton, as a beneficiary, could assert derivative claims on behalf of Old Point Trust as trustee. (June 27, 2014, Op. 11-13.) The Court concluded that "Burton has standing to lodge derivative claims as a beneficiary of the Irrevocable Trusts." (*Id.* at 13.)

The Court finds no basis to grant the relief requested by Hudgins Estate. The Hudgins Estate Demurrer largely ignores the Court's prior Opinion and again raises issues that are not appropriate to resolve at this stage in the proceeding.

### A. Whether the Express Terms of the Trusts Preclude Lester Hudgins from Acting as a Trustee

Burton cites four cases to support her proposition that a *de facto* trustee and an actual trustee are different, and these cases, in fact, demonstrate that the two terms are distinct. The Court contemplates principles of equity when establishing a constructive or *de facto* trustee. *See First Nat. Bank v. Johnson*, 183 Va. 227, 31 S.E.2d 581 (1944). An actual trustee is a creature of the principles of law, not equity. *See* Va. Code § 64.2-754 (discussing accepting or declining a trusteeship). The trusts' preclusion of Lester Hudgins serving as trustee does not bar him from being a *de facto* trustee. Whether the circumstances support that Hudgins acted as a *de facto* trustee is a factual issue improper to resolve upon a demurrer. The Court overrules the demurrer as to this ground.

### B. Whether Old Point Trust, as an Alleged Trustee, Is a Proper Plaintiff

This ground involves the point conceded by Burton and resolved by an agreed-upon Order. The Court sustained the demurrer as to this ground in its February 5, 2015, Order.

### C. Whether Lester Hudgins Could Have Been the Trustee Because There Is No Allegation That Proper Statutory Procedures Were Followed

The statutory procedures necessary to establish an actual trustee are not required to classify Lester Hudgins as a *de facto* trustee. The statutory procedures instead exist to determine a successor trustee in the event of a vacancy in trusteeship. Va. Code § 64.2-757. Hudgins Estate ignores the fundamental distinction of a *de facto* classification. Courts long have applied equitable principles to hold an individual responsible as a "*de facto* trustee" for assuming responsibilities with respect to trust property for which he or she had no authority. *See Loving v. Ashlin*, 76 Va. 907, 910-12 (1882); *see also Pannill v. Calloway*, 78 Va. 387, 395 (1884) ("[I]f a person assume[s] to act as trustee, he shall be treated in equity as a trustee, whether duly appointed as trustee or not."). A *de facto* trustee therefore is not a creature of statute; hence, unlike an actual trustee, Burton is not required

to allege the satisfaction of statutory procedures to establish that Lester Hudgins is a *de facto* trustee. The Court therefore overrules the demurrer as to this ground.

D. *Whether the Amended Complaint Alleges That Lester Hudgins Sent the Crummey Notices*

As Burton indicates in her Memorandum in Opposition and argued at the February 5, 2015, hearing, the Amended Complaint *does* in fact allege that Lester Hudgins sent the Crummey Notices. (Am. Compl. 2.) The Court overrules the demurrer as to this ground.

E. *Whether There Is a Basis in Law To Conclude That Lester Hudgins's Actions Made Him a De Facto Trustee*

Hudgins Estate argues that there is no basis in law to conclude that Hudgins's actions made him a *de facto* trustee. Burton, nevertheless, articulates facts in her Amended Complaint sufficient to allege that Hudgins acted as a *de facto* trustee. (Am. Compl. 2.) At this stage, Burton does not have to match legal principles with facts to prove that Hudgins was a *de facto* trustee. Whether the circumstances warrant Hudgins being classified as a *de facto* trustee is a factual issue that is improper to resolve upon a demurrer. The Court therefore overrules the demurrer as to this ground.

F. *Whether Virginia Law Recognizes a De Facto Trustee*

As discussed at length in the June 27, 2014, Opinion and *supra*, Virginia law recognizes *de facto* trustees. (June 27, 2014, Op. 9-10.) The Court overrules the demurrer as to this ground.

G. *Whether a De Facto Trustee Has a Duty To Personally Fund a Trust or Provide Legal Notices to Third Parties*

Hudgins Estate does not make a cogent argument alleging that there is "no Virginia law" imposing duties on a *de facto* trustee. (Hudgins Estate's Dem. 5.) Hudgins Estate cites no authority, either directly or indirectly, to support its assertion. As discussed in the June 27, 2014, Opinion and *supra*, a *de facto* trustee is a not a creature of law because, by definition, a *de facto* trustee acts without legal authority. (June 27, 2014, Op. 9.) Even a lack of "law," therefore, would not be dispositive because equitable principles and duties still could be imposed. Hudgins Estate is free at trial to argue against any purported duties Burton assigns to a *de facto* trustee. Simply stating that there is "no Virginia law" without citing applicable authority is insufficient to undermine the adequacy of Burton's pleading. The Court overrules the demurrer as to this ground.

## H. *Whether Lester Hudgins Is Liable for Harm Occasioned by an Act of God*

The Court finds no merit in Hudgins Estate's argument that, based on the Amended Complaint, Burton's claim stems solely from an act of God. Burton states in her Amended Complaint that the "breach of Hudgins' duties as *de facto* Trustee" led to the relief sought. (Am. Compl. 2.) The Court therefore overrules the demurrer as to this ground.

## I. *Whether Lester Hudgins Had a Duty To Pay for the Policies or Advise His Beneficiaries of His Decision Not to Make Payments or Gifts to the Trust*

Contrary to Hudgins Estate's assertion, Burton does not allege that Lester Hudgins had an individual duty to make policy payments or advise his beneficiaries of the lack of payments or gifts. Burton instead argues that Lester Hudgins was a *de facto* trustee and, concomitant with that title, had certain duties. (Am. Compl. 2.) Burton alleges sufficient facts in her Amended Complaint to put Hudgins Estate on notice of this claim. The Court overrules the demurrer as to this ground.

### Conclusion

The Court overrules Hudgins Estate's Demurrer to Count VIII of the Amended Complaint. As discussed *supra*, the Court's February 5, 2015, Order disposed of the remaining demurrers to the Amended Complaint.